UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA

Index No.:  08CRIM145

     -against-

ANTHONY VALENTI,

          Defendant.
---------------------------------------------------------------X

## PRESENTENCE MEMORANDUM ON BEHALF OF

## ANTHONY VALENTI

Respectfully submitted,

MICHAEL M. PREMISLER, ESQ.
Attorney for Anthony Valenti
1 Old Country Road – Suite 360
Carle Place, New York 11514
(516) 294-6260

MICHAEL M.
PREMISLER, ESQ.

1

## INTRODUCTION

This presentence memorandum is submitted on behalf of Anthony Valenti (Tony). Tony has plead guilty to failing to file a tax return (26 USC 7203), a Class A Misdemeanor. This case results from the failure to make employer contributions, on behalf of employees, to the Jack Ward Color Service Pension Plan (the Plan). Tony was a twenty-five percent (25%) shareholder of Jack Ward Color Services Inc. (Jack Ward) and the principal responsible for the plan.

The investigation and plea resulted from the failure of the defendant to make payments due for the last quarter of 2003 and the first quarter of 2004. A deposit of about $30,000 and the necessary tax form, which should have been made and filed in early 2004, were not made. Tony understands that he was the person responsible for the plan and the person responsible for making the payments. He assumes full responsibility for the failure to make those payments and file the necessary returns. To date, Tony has repaid $22,500 to the plan and intends to make full restitution for the amount due.

## BACKGROUND

On February 18, 2004, as a result of the financial burden of Jack Ward, Tony had a nervous breakdown. On that day, he walked out of his office at Jack Ward and has never returned. His brother, Joe and his accountant, Louis V. Perrotta (Lou), without written authority, but with Tony's consent, assumed control and management of the business. Lou and Joe operated the business for a few months, collected approximately $274,000 in receivables, paid whatever bills and obligations they wanted to pay (obviously not the pension obligation) and then, with the money they collected, without Tony's knowledge, opened their own business, at the same location, selling the same services, in the same field and transferred all of the assets and equipment of Jack Ward to the new business. They also used funds of Jack Ward to pay some of their own bills and expenses. At the time of his breakdown, Tony expected and

MICHAEL M.
PREMISLER, ESQ.

2

understood that Lou and Joe would pay the amount due the plan. He was surprised, a few years later, when he learned that these payments had not been made. Notwithstanding these facts and the conduct of his brother and accountant, Tony accepts his responsibility and appreciates the opportunity to make the employees of the plan whole. He hopes that based upon the facts as presented here and in the presentence report prepared by the Probation Department that his sentence will be limited to restitution and a fine.

Tony graduated from The School of Visual Arts at 209 East 23rd Street, in 1976. His first job was with Jack Ward Colors Services. He responded to a notice posted on a bulletin board at school and was immediately hired. Jack Ward's place of business was, through 2004 at 220 East 23rd Street, just across the street from his school. As an account executive with Jack Ward Tony developed a substantial book of business (one million dollars gross annual sales) and introduced computer graphics into the mix of services the company provided.

In 1996, as a result of the retirement of one of it's owners, Tony was offered a twenty-five percent (25%) interest in the company. His initial investment was $50,000 plus he turned over his entire book of business. Karl Wessel (Karl), the remaining shareholder, retained a 75% interest. That same year, Jack Ward retained Lou to handle all its accounting and payroll needs. Lou remained in this position through the demise of the business in 2004 and thereafter, in the new business he formed.

In 1996, when Tony bought into the business, Jack Ward was grossing approximately $3.5 million dollars per year, in sales. Mainly through his efforts, Jack Ward was able to increase its sales to about $10 million per year, by September 11, 2001. Jack Ward customers were mainly financial institutions. It catered to the overnight, on demand, printing needs of these customers. In order to meet customer demands and increase sales, Jack Ward had to purchase new state of the art digital printing equipment and the associated computers, folders, and collators to support the business. As the business continued to grow, it took on more space

and eventually came to occupy the entire second floor at 220 East 23rd Street. To help finance it's growth, Jack Ward, in 1999, took on an $800,000 line of credit with Banco Popular (Guaranteed by Tony and Karl). To remain competitive, it's employee headcount and consequently payroll grew from approximately 35-40 in 1996 to well over 70 by 9/11/2001. In sum, Jack Ward was doing very well and the predication from all parties was for continued growth.

**FORMATION OF THE PLAN AND**

**FACTS LEADING TO THE DEFAULT**

Along with growth, the need to retain valuable, well trained employees, in a very competitive market place, also grew. To that end, Jack Ward established many employee benefits. Health coverage was provided for everyone, vacation time was extended, salaries increased, and finally a 401K plan was established in, we believe, 1999. Jack Ward even went so far as to establish a plan which provided for matching contributions by the employer, all in an effort to retain valuable employees.

All this growth was supported by substantial financial contributions from Tony and his then partner, Karl Wessel. These included equipment leases, bank loans, and credit lines. All, of which were personally guaranteed by Tony and Karl.

Then came the attack of September 11, 2001. Overnight sales dropped from $10 million to $2 million dollars, per year. So devastating was the impact of this event on the business that Jack Ward qualified for a $625,000 SBA "9/11 Disaster Relief Loan." This loan was secured by Tony's personal guarantee and a lien on his home. $312,000 of this loan was used to payoff some short term obligations. The balance was to be used as cash to float the business while new sources of revenue were found. Notwithstanding the limitations on the use of this revenue and notwithstanding that Banco Popular participated in and was aware of these limitations, Banco Popular withdrew, without permission and without notice, $300,000 from the SBA loan to

MICHAEL M.
PREMISLER, ESQ.

4

pay down its revolving line of credit, even though Jack Ward was current on that account. Somehow, Tony had to come up with an additional $300,000 to keep the business going. The combined effect of a devastating post 9/11 economy, the loss of funds from the SBA loan and the lack of new business put a strain on Jack Ward and Tony, personally. Karl Wessel, Tony's partner, who was eleven years older, decided to retire and relocate to Georgia. He just couldn't deal with the pressure. Karl recently passed away. Karl left Tony alone and responsible for the debt, the company and all its employees. Tony did everything possible to save the company. He depleted his own personal bank accounts and the accounts of his wife and his mother and father. He took every bit of available cash he had or could get his hands on and poured this money into Jack Ward. In early 2002, he took himself off the payroll, dropped his family from Jack Ward's health plan and began paying for all his own expenses. Basically, he worked without compensation while contributing all of his cash and assets and the assets of his wife and family to the company. In addition, his wife, though not a shareholder or an employee of Jack Ward charged some of Jack Ward's obligations on her credit cards.[1] In Exhibit "A" annexed hereto we attempt to outline the contributions made by Tony, his wife, and their families to Jack Ward and explain from where they obtained this money.

It was during this period of time that Tony came to rely more and more on the services of Lou. Lou made all of the financial decisions and helped guide the company through this difficult time. Tony felt that he could depend on Lou based on their long business relationship and the friendship they had developed over the years. Lou and Tony had contact on a daily basis and Lou was physically in the office at least twice a week. Lou's main role was to oversee the financial side of the business and free Tony to develop business opportunities and make sales calls. Lou would routinely contact creditors, banks, equipment suppliers, the landlord, medical

---

[1] It should also be noted that Tony's wife, Ann was working in the Twin Towers on September 11, 2006 and had been working in that building for twenty years prior to September 11th. She escaped without injury.

MICHAEL M. PREMISLER, ESQ.

care providers, the 401(k) plan administrator and the Department of Taxation and Finance. Lou was free to enter into any and all agreements regarding payments. He was also in charge of collections and was in constant contact with all of Jack Ward's customers, trying to expedite payments and increase cash flow.

In an additional attempt to increase sales and save the company, shortly after 9/11 Tony brought his brother, into the business. Joe had his own, smaller but similar business. Tony felt that by moving Joe's business over to Jack Ward he could increase sales.

In total, Tony and his wife, between September 11, 2001 and February 18, 2004, when Tony had his breakdown, contributed to Jack Ward or guaranteed Jack Ward debt totaling $942,000, not including the $800,000 Line of credit he had guaranteed in 1999. In addition, Tony waived his salary, which for this period would have been $300,000, paid all his own business expenses and refused to participate in any of the companies benefit plans (see Exhibit "A", Schedule of Contributions).

As time past, the financial pressures and stress to save Jack Ward continued to grow. Tony had been involved with the business since college. The stress of losing it was tremendous. He had known some of the employees since joining the company in 1976. The fact that the employees would lose their jobs made him sick. He could not accept the fact that Jack Ward could close. He did everything he could to make sure the employees received a paycheck, every week. If the company didn't have the money, he took it out of his pocket. Finally, the stress became much too much and on February 18, 2004, Tony simply got up from his desk and walked out the door. He never returned to Jack Ward. Thereafter, he had very little contact with anyone at the company other than some telephone calls. His brother Joe and Lou took control and continued to operate the business. Tony has no recollection of signing checks after that date. However, it is clear that $274,000 was collected by Jack Ward after February 2004 and $274,000 was paid out (see Exhibit "B", check register).

MICHAEL M.
PREMISLER, ESQ.

6

## DEFAULT ON PAYMENTS

In the weeks preceding Tony's breakdown on February 18, 2004, Tony, Lou, and Joe had discussed many of the problems facing the business, including all of the employee benefit plans and most specifically the pension plan. Tony's goal had always been to insure that each of the employees received a pay check, every week. Other obligations were paid only as necessary. Before his breakdown, Tony and Lou had discussed and Tony had intended to close the plan. Lou was charged with this task. Jack Ward could no longer afford to make the contributions. Though Lou assured Tony that this was done and Tony concluded that it had been done apparently, the plan was not closed for at least three or four months and the final contribution was not made. This resulted in this current investigation. It is important to note that the money collected by Joe and Lou after February 18, 2004, was sufficient to meet this obligation (and many others for which Tony was personally liable) but Lou and Joe had other plans. They took money and used it to open their own business.

Before Tony's breakdown his wife, Ann had, by charge on her American Express account, paid a $36,000 obligation to Xerox for equipment for Jack Ward (See Exhibit "A", line 5 and Exhibit A5-1). If these lease payments had not been made, Xerox would have repossessed the equipment. Lou and Joe did pay $28,000 of this obligation (see Exhibit "B", check register). It also appears that Lou himself took close to $10,000 from the business during this period and Joe another $4,200 (See Exhibit "B" check register). In addition, close to $80,000 of the money they collected was paid directly to J.W. Digital, their new company. This money could have been used to make the necessary payments to the plan and for that matter to pay some of the other obligations which Tony had personally guaranteed.[2]

The problems and stress resulting from Jack Ward's decline didn't end for Tony when he had his breakdown and when Lou and Joe finally closed the business some time later. Within

MICHAEL M.
PREMISLER, ESQ.

[2] The check register attached as Exhibit "B" includes checks written for period February 4, 2004. However, the total of payments, reported at the end of the schedule, is for the period beginning in 2001.

six months of February 18, 2004, Tony was diagnosed with Coronary Artery Disease and since, has undergone five cardiac procedures and has nine Stents (the last on January 11, 2008). He will be on heart medication for the rest of life. In 2004, Tony filed personal bankruptcy (See Exhibit A-1 Petition and Discharge). Notwithstanding, the discharge in bankruptcy, in addition to this pension obligation Tony still owes $190,000 for payroll taxes and the Internal Revenue Service has a lien on his home and an income execution on his current salary (there are no deductions because he earns below the minimum).

### PERSONAL INFORMATION

Tony is 53 years old. He was born on March 31, 1954. He currently lives at 1529 Stevens Ave., Merrick New York, with his wife Ann. They jointly own this home. Tony's share is subject to the IRS lien. They have a 22 year old daughter who, in May 2007, was graduated from The George Washington University. She works in Washington D.C. for Congressman Peter King. Ann works for Sidley Austin, (a Law Firm) as Director of Secretarial and Word Processing Services. Her salary is $165,000 per year. Tony is employed by Ocean Outboard Inc. at 351 South Main Street Freeport, New York as a boat sales person. His base salary is $23,600, per year, plus commission. In 2006, he earned about $14,000 in commissions. In 2007 he earned $3,875 in commission.

## **ATTACHMENTS**

Exhibit "A", schedule of contributions to Jack Ward <u>with supporting documentation.</u>

Exhibit "B", check register

Exhibit "C", letters from Tony's doctors explaining his current medical conditions.

Exhibit "D", letters of reference from friends and family.

Exhibit "E", letter from Tony's wife

Exhibit "F", current financial statement

MICHAEL M.
PREMISLER, ESQ.

## CONCLUSION

Tony accepts his responsibility.  To date he has refunded $22,500 out of the $30,693 obligation to the plan.  Under these circumstances, we believe that a minimum fine is the appropriate sentence.

Dated: Carle Place, New York

Respectfully submitted,

MICHAEL M. PREMISLER, ESQ.
Attorney for Anthony Valenti
1 Old Country Road – Suite 360
Carle Place, New York 11514
(516) 294-6260

MICHAEL M.
PREMISLER, ESQ.

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA

                                        Index No.:  08CRIM145

    -against-

ANTHONY VALENTI,

                Defendant.
-------------------------------------------------------------X

## PRESENTENCE MEMORANDUM ON BEHALF OF

## ANTHONY VALENTI

Respectfully submitted,

MICHAEL M. PREMISLER, ESQ.
Attorney for Anthony Valenti
1 Old Country Road – Suite 360
Carle Place, New York 11514
(516) 294-6260

MICHAEL M.
PREMISLER, ESQ.

1

## INTRODUCTION

This presentence memorandum is submitted on behalf of Anthony Valenti (Tony). Tony has plead guilty to failing to file a tax return (26 USC 7203), a Class A Misdemeanor. This case results from the failure to make employer contributions, on behalf of employees, to the Jack Ward Color Service Pension Plan (the Plan). Tony was a twenty-five percent (25%) shareholder of Jack Ward Color Services Inc. (Jack Ward) and the principal responsible for the plan.

The investigation and plea resulted from the failure of the defendant to make payments due for the last quarter of 2003 and the first quarter of 2004. A deposit of about $30,000 and the necessary tax form, which should have been made and filed in early 2004, were not made. Tony understands that he was the person responsible for the plan and the person responsible for making the payments. He assumes full responsibility for the failure to make those payments and file the necessary returns. To date, Tony has repaid $22,500 to the plan and intends to make full restitution for the amount due.

## BACKGROUND

On February 18, 2004, as a result of the financial burden of Jack Ward, Tony had a nervous breakdown. On that day, he walked out of his office at Jack Ward and has never returned. His brother, Joe and his accountant, Louis V. Perrotta (Lou), without written authority, but with Tony's consent, assumed control and management of the business. Lou and Joe operated the business for a few months, collected approximately $274,000 in receivables, paid whatever bills and obligations they wanted to pay (obviously not the pension obligation) and then, with the money they collected, without Tony's knowledge, opened their own business, at the same location, selling the same services, in the same field and transferred all of the assets and equipment of Jack Ward to the new business. They also used funds of Jack Ward to pay some of their own bills and expenses. At the time of his breakdown, Tony expected and

MICHAEL M.
PREMISLER, ESQ.

2

understood that Lou and Joe would pay the amount due the plan. He was surprised, a few years later, when he learned that these payments had not been made. Notwithstanding these facts and the conduct of his brother and accountant, Tony accepts his responsibility and appreciates the opportunity to make the employees of the plan whole. He hopes that based upon the facts as presented here and in the presentence report prepared by the Probation Department that his sentence will be limited to restitution and a fine.

Tony graduated from The School of Visual Arts at 209 East 23rd Street, in 1976. His first job was with Jack Ward Colors Services. He responded to a notice posted on a bulletin board at school and was immediately hired. Jack Ward's place of business was, through 2004 at 220 East 23rd Street, just across the street from his school. As an account executive with Jack Ward Tony developed a substantial book of business (one million dollars gross annual sales) and introduced computer graphics into the mix of services the company provided.

In 1996, as a result of the retirement of one of it's owners, Tony was offered a twenty-five percent (25%) interest in the company. His initial investment was $50,000 plus he turned over his entire book of business. Karl Wessel (Karl), the remaining shareholder, retained a 75% interest. That same year, Jack Ward retained Lou to handle all its accounting and payroll needs. Lou remained in this position through the demise of the business in 2004 and thereafter, in the new business he formed.

In 1996, when Tony bought into the business, Jack Ward was grossing approximately $3.5 million dollars per year, in sales. Mainly through his efforts, Jack Ward was able to increase its sales to about $10 million per year, by September 11, 2001. Jack Ward customers were mainly financial institutions. It catered to the overnight, on demand, printing needs of these customers. In order to meet customer demands and increase sales, Jack Ward had to purchase new state of the art digital printing equipment and the associated computers, folders, and collators to support the business. As the business continued to grow, it took on more space

and eventually came to occupy the entire second floor at 220 East 23rd Street. To help finance it's growth, Jack Ward, in 1999, took on an $800,000 line of credit with Banco Popular (Guaranteed by Tony and Karl). To remain competitive, it's employee headcount and consequently payroll grew from approximately 35-40 in 1996 to well over 70 by 9/11/2001. In sum, Jack Ward was doing very well and the predication from all parties was for continued growth.

## FORMATION OF THE PLAN AND
## FACTS LEADING TO THE DEFAULT

Along with growth, the need to retain valuable, well trained employees, in a very competitive market place, also grew. To that end, Jack Ward established many employee benefits. Health coverage was provided for everyone, vacation time was extended, salaries increased, and finally a 401K plan was established in, we believe, 1999. Jack Ward even went so far as to establish a plan which provided for matching contributions by the employer, all in an effort to retain valuable employees.

All this growth was supported by substantial financial contributions from Tony and his then partner, Karl Wessel. These included equipment leases, bank loans, and credit lines. All, of which were personally guaranteed by Tony and Karl.

Then came the attack of September 11, 2001. Overnight sales dropped from $10 million to $2 million dollars, per year. So devastating was the impact of this event on the business that Jack Ward qualified for a $625,000 SBA "9/11 Disaster Relief Loan." This loan was secured by Tony's personal guarantee and a lien on his home. $312,000 of this loan was used to payoff some short term obligations. The balance was to be used as cash to float the business while new sources of revenue were found. Notwithstanding the limitations on the use of this revenue and notwithstanding that Banco Popular participated in and was aware of these limitations, Banco Popular withdrew, without permission and without notice, $300,000 from the SBA loan to

pay down its revolving line of credit, even though Jack Ward was current on that account. Somehow, Tony had to come up with an additional $300,000 to keep the business going. The combined effect of a devastating post 9/11 economy, the loss of funds from the SBA loan and the lack of new business put a strain on Jack Ward and Tony, personally. Karl Wessel, Tony's partner, who was eleven years older, decided to retire and relocate to Georgia. He just couldn't deal with the pressure. Karl recently passed away. Karl left Tony alone and responsible for the debt, the company and all its employees. Tony did everything possible to save the company. He depleted his own personal bank accounts and the accounts of his wife and his mother and father. He took every bit of available cash he had or could get his hands on and poured this money into Jack Ward. In early 2002, he took himself off the payroll, dropped his family from Jack Ward's health plan and began paying for all his own expenses. Basically, he worked without compensation while contributing all of his cash and assets and the assets of his wife and family to the company. In addition, his wife, though not a shareholder or an employee of Jack Ward charged some of Jack Ward's obligations on her credit cards.[1] In Exhibit "A" annexed hereto we attempt to outline the contributions made by Tony, his wife, and their families to Jack Ward and explain from where they obtained this money.

It was during this period of time that Tony came to rely more and more on the services of Lou. Lou made all of the financial decisions and helped guide the company through this difficult time. Tony felt that he could depend on Lou based on their long business relationship and the friendship they had developed over the years. Lou and Tony had contact on a daily basis and Lou was physically in the office at least twice a week. Lou's main role was to oversee the financial side of the business and free Tony to develop business opportunities and make sales calls. Lou would routinely contact creditors, banks, equipment suppliers, the landlord, medical

---

[1]  It should also be noted that Tony's wife, Ann was working in the Twin Towers on September 11, 2006 and had been working in that building for twenty years prior to September 11th. She escaped without injury.

MICHAEL M.
PREMISLER, ESQ.

care providers, the 401(k) plan administrator and the Department of Taxation and Finance. Lou was free to enter into any and all agreements regarding payments. He was also in charge of collections and was in constant contact with all of Jack Ward's customers, trying to expedite payments and increase cash flow.

In an additional attempt to increase sales and save the company, shortly after 9/11 Tony brought his brother, into the business. Joe had his own, smaller but similar business. Tony felt that by moving Joe's business over to Jack Ward he could increase sales.

In total, Tony and his wife, between September 11, 2001 and February 18, 2004, when Tony had his breakdown, contributed to Jack Ward or guaranteed Jack Ward debt totaling $942,000, not including the $800,000 Line of credit he had guaranteed in 1999. In addition, Tony waived his salary, which for this period would have been $300,000, paid all his own business expenses and refused to participate in any of the companies benefit plans (see Exhibit "A", Schedule of Contributions).

As time past, the financial pressures and stress to save Jack Ward continued to grow. Tony had been involved with the business since college. The stress of losing it was tremendous. He had known some of the employees since joining the company in 1976. The fact that the employees would lose their jobs made him sick. He could not accept the fact that Jack Ward could close. He did everything he could to make sure the employees received a paycheck, every week. If the company didn't have the money, he took it out of his pocket. Finally, the stress became much too much and on February 18, 2004, Tony simply got up from his desk and walked out the door. He never returned to Jack Ward. Thereafter, he had very little contact with anyone at the company other than some telephone calls. His brother Joe and Lou took control and continued to operate the business. Tony has no recollection of signing checks after that date. However, it is clear that $274,000 was collected by Jack Ward after February 2004 and $274,000 was paid out (see Exhibit "B", check register).

## DEFAULT ON PAYMENTS

In the weeks preceding Tony's breakdown on February 18, 2004, Tony, Lou, and Joe had discussed many of the problems facing the business, including all of the employee benefit plans and most specifically the pension plan. Tony's goal had always been to insure that each of the employees received a pay check, every week. Other obligations were paid only as necessary. Before his breakdown, Tony and Lou had discussed and Tony had intended to close the plan.   Lou was charged with this task. Jack Ward could no longer afford to make the contributions. Though Lou assured Tony that this was done and Tony concluded that it had been done apparently, the plan was not closed for at least three or four months and the final contribution was not made. This resulted in this current investigation. It is important to note that the money collected by Joe and Lou after February 18, 2004, was sufficient to meet this obligation (and many others for which Tony was personally liable) but Lou and Joe had other plans. They took money and used it to open their own business.

Before Tony's breakdown his wife, Ann had, by charge on her American Express account, paid a $36,000 obligation to Xerox for equipment for Jack Ward  (See Exhibit "A", line 5 and Exhibit A5-1). If these lease payments had not been made, Xerox would have repossessed the equipment. Lou and Joe did pay $28,000 of this obligation (see Exhibit "B", check register). It also appears that Lou himself took close to $10,000 from the business during this period and Joe another $4,200 (See Exhibit "B" check register). In addition, close to $80,000 of the money they collected was paid directly to J.W. Digital, their new company. This money could have been used to make the necessary payments to the plan and for that matter to pay some of the other obligations which Tony had personally guaranteed.[2]

The problems and stress resulting from Jack Ward's decline didn't end for Tony when he had his breakdown and when Lou and Joe finally closed the business some time later. Within

---

[2] The check register attached as Exhibit "B" includes checks written for period February 4, 2004. However, the total of payments, reported at the end of the schedule, is for the period beginning in 2001.

MICHAEL M.
PREMISLER, ESQ.

7

six months of February 18, 2004, Tony was diagnosed with Coronary Artery Disease and since, has undergone <u>five cardiac procedures and has nine Stents (the last on January 11, 2008</u>). He will be on heart medication for the rest of life. In 2004, Tony filed personal bankruptcy (<u>See Exhibit A-1 Petition and Discharge).</u> Notwithstanding, the discharge in bankruptcy, in addition to this pension obligation Tony still owes $190,000 for payroll taxes and the Internal Revenue Service has a lien on his home and an income execution on his current salary (there are no deductions because he earns below the minimum).

## PERSONAL INFORMATION

Tony is 53 years old. He was born on March 31, 1954. He currently lives at 1529 Stevens Ave., Merrick New York, with his wife Ann. They jointly own this home. Tony's share is subject to the IRS lien. They have a 22 year old daughter who, in May 2007, was graduated from The George Washington University. She works in Washington D.C. for Congressman Peter King. Ann works for Sidley Austin, (a Law Firm) as Director of Secretarial and Word Processing Services. Her salary is $165,000 per year. Tony is employed by Ocean Outboard Inc. at 351 South Main Street Freeport, New York as a boat sales person. His base salary is $23,600, per year, plus commission. In 2006, he earned about $14,000 in commissions. In 2007 he earned $3,875 in commission.

## ATTACHMENTS

Exhibit "A", schedule of contributions to Jack Ward <u>with supporting documentation.</u>

Exhibit "B", check register

Exhibit "C", letters from Tony's doctors explaining his current medical conditions.

Exhibit "D", letters of reference from friends and family.

Exhibit "E", letter from Tony's wife

Exhibit "F", current financial statement

MICHAEL M.
PREMISLER, ESQ.

## CONCLUSION

Tony accepts his responsibility.  To date he has refunded $22,500 out of the $30,693 obligation to the plan.  Under these circumstances, we believe that a minimum fine is the appropriate sentence.

Dated: Carle Place, New York

Respectfully submitted,

MICHAEL M. PREMISLER, ESQ.
Attorney for Anthony Valenti
1 Old Country Road – Suite 360
Carle Place, New York 11514
(516) 294-6260

MICHAEL M.
PREMISLER, ESQ.

Exhibit A

Valenti Cash Contribution
Jack Ward Color Service, Inc.

| CASH CONTRIBUTIONS | AMOUNT | APPROX. DATE | DESCRIPTION COMMENTS | COMMENT | SOURCE | ATTACHED DOCUMENTS |
|---|---|---|---|---|---|---|
| 1. Line of Credit | 800,000 | 6/15/99 | Personal Guarantee Valenti/Wessel | Discharged in Bankruptcy | Banco Popular | See Exhibit A-1. Discharge of Debtor. A-2 Bankruptcy Schedule |
| 2. NYS Sales Tax | 46,000 | 5/15/02 | Valenti/Cash | Cash on hand Valenti | Valenti | See Exhibit A-3 |
| 3. SBA Loan | 623,000 | 8/15/02 | Lien on Homes Valenti/Wessel | Settled by Valenti for 279,000 Mortgage on current home | SBA | See Exhibit A-4 |
| 4. JW Debt/Rabbit Messenger | 7,600 | 12/15/03 | Ann Valenti/Cash | Unpaid Balance Due Ann Valenti | Ann Valenti Cash | |
| 5. JW Debt/Xerox | 36,000 | | Ann Valenti/Amex | 8,000 Balance due Ann Valenti | Ann Valenti Cash | See Exhibit A5-1 American Express Statement 10/03 and Exhibit A5-2 statement 12/03 from Ann's personal account. 11/03 statement, is missing. copy has been ordered and will be provided when received. Exhibit A5-2 shows an increase in the amount due of $11,645.05 as of January, 2004. This increase substantially results from additional payments to American Express. |
| 6. JW Debt/NYS Sales Tax | 40,000 | 8/4/04 | Ann borrowed $35,000 from her 401K as a down payment. Balance was paid by Tony at | Balance due Ann Valenti, $35,000. | Ann Valenti Cash | Exhibit A6-1 is evidence of Ann's hardship withdrawal from her 401K of $35,000. |

| 7. Loan/Various JW Debt | 30,000 | $325 per month. Loan/Daloia Ann's mother | Unpaid | Antoinette Daloia | Exhibit 7 – Is a copy of the withdrawal slip on the account of Ann's mother and father for $30,000. The payee on this transaction was Jack Ward Color Service. |
|---|---|---|---|---|---|
| 8. Waive Salary 24 months | 300,000 | Anthony Valenti | Unpaid | Valenti | |
| 9. Waiver medical benefits 24 months | 12,000 | Anthony Valenti | Unpaid | Valenti | |
| 10. Loan/Various | 170,000 | Loan/Valenti, Senior | Mortgage on Valenti's parents home/unpaid. Tony's parents made numerous withdrawals from their home equity line of credit to help Tony. We have ordered copies of those statements. | Antonino Valenti | |

Eastern District of New York
290 Federal Plaza
P.O. Box #9013
Central Islip, NY 11722-9013

IN RE:                                                    CASE NO: 8-04-84522-mlc

Anthony Valenti

SSN/TAX ID:                                              CHAPTER: 7

xxx-xx-7223

DEBTOR(s)

# DISCHARGE OF DEBTOR(S)

It appearing that the debtor(s) is entitled to a discharge,

**IT IS ORDERED** :

The debtor(s) is granted a discharge under Section 727 of Title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: February 1, 2005

s/ Melanie L. Cyganowski
United States Bankruptcy Judge

**SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.**

48564

Exhibit A-2

(Official Form 1) (9/01)

FORM B1

# United States Bankruptcy Court
## Eastern District of New York

# Voluntary Petition

| Name of Debtor (if individual, enter Last, First, Middle): | Name of Joint Debtor (Spouse)(Last, First, Middle): |
|---|---|
| Valenti, Anthony | |
| All Other Names used by the Debtor in the last 6 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 6 years (include married, maiden, and trade names): |
| Soc. Sec./Tax I.D. No. (if more than one, state all):<br>xxxxx7223 | Soc. Sec./Tax I.D. No. (if more than one, state all): |
| Street Address of Debtor (No. & Street, City, State & Zip Code):<br>1529 Stevens Ave.<br>Merrick, NY 11566 | Street Address of Joint Debtor (No. & Street, City, State & Zip Code): |
| County of Residence or of the<br>Principal Place of Business:   Nassau | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): | Mailing Address of Joint Debtor (if different from street address): |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

## Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** (Check any applicable box)

- ☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.
- ☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

### Type of Debtor (Check all boxes that apply)

- ☒ Individual(s)
- ☐ Corporation
- ☐ Partnership
- ☐ Other
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker

### Chapter or Section of Bankruptcy Code Under Which the Petition is Filed (Check one box)

- ☒ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Sec. 304 - Case ancillary to foreign proceeding

### Nature of Debts (Check one box)

- ☐ Consumer/Non-Business
- ☒ Business

### Chapter 11 Small Business (Check all boxes that apply)

- ☐ Debtor is a small business as defined in 11 U.S.C. § 101
- ☐ Debtor is and elects to be considered a small business under 11 U.S.C. § 1121(e) (Optional)

### Filing Fee (Check one box)

- ☒ Full Filing Fee Attached
- ☐ Filing Fee to be paid in installments (Applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form No. 3.

### Statistical/Administrative Information (Estimates only)

- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

| Estimated Number of Creditors | 1-15 | 16-49 | 50-99 | 100-199 | 200-999 | 1000-over |
|---|---|---|---|---|---|---|
| | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

| Estimated Assets | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ |

| Estimated Debts | $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | More than $100 million |
|---|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |

**Voluntary Petition**
*(This page must be completed and filed in every case)*

| Prior Bankruptcy Case Filed Within Last 6 Years (If more than one, attach additional sheet) | | |
|---|---|---|
| Location<br>Where Filed:   NONE | Case Number: | Date Filed: |

| Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor:<br>NONE | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _Anthony Valent_
Signature of Debtor

X _Not Applicable_
Signature of Joint Debtor

Telephone Number (If not represented by attorney)
_7/9/04_
Date

### Signature of Attorney

X _Jeff Morgenstern_
Signature of Attorney for Debtor(s)

Jeff H. Morgenstern,  4163
Printed Name of Attorney for Debtor(s) / Bar No.

Jeff H. Morgenstern
Firm Name

One Old Country Road, Suite 585  Carle Place, NY 11514
Address

(516) 739-5908                    (516) 719-7280
Telephone Number
_7/9/04_
Date

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.
The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

### Exhibit A
(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)

☐ Exhibit A is attached and made a part of this petition.

### Exhibit B
(To be completed if debtor is an individual whose debts are primarily consumer debts)

I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.

X _Jeff Morgenstern_        _7/9/04_
Signature of Attorney for Debtor(s)        Date

### Exhibit C

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐  Yes, and Exhibit C is attached and made a part of this petition.
☒  No

### Signature of Non-Attorney Petition Preparer

I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.

Not Applicable
Printed Name of Bankruptcy Petition Preparer

_____
Social Security Number

_____
Address

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

X _Not Applicable_
Signature of Bankruptcy Petition Preparer

_____
Date

A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110, 18 U.S.C. § 156.

In re:  Anthony Valenti                                          Case No. _____
                    Debtor                                                    (If known)

# SCHEDULE A - REAL PROPERTY

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| Residence in Merrick | Fee Owner | J | $ 475,000.00 | $ 668,400.00 |
|  | Total ➤ | | $ 475,000.00 | |

(Report also on Summary of Schedules.)

In re   Anthony Valenti                                              Case No.
_____                                    _____
        Debtor                                                      (If known)

# SCHEDULE B - PERSONAL PROPERTY

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITH-OUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Bank Accounts | | 1,000.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | Household Goods and Furnishings | J | 10,000.00 |
| 5. Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | | Wearing Apparel | | 2,000.00 |
| 7. Furs and jewelry. | | Miscellaneous Jewelry | | unknown |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | Life Insurance Policies | | 0.00 |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | | IRA Account | | 24,000.00 |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | | Ink & Ideas Inc. (defunct) | | 0.00 |
| | | Jack Ward Color Service Inc. (defunct) | | 0.00 |
| | | Jack Ward Digital Inc. (defunct) | | 0.00 |
| | | Slide Shop Inc. (defunct) | | 0.00 |

In re   __Anthony Valenti__  ,     Case No. _____
             Debtor                                               (If known)

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 15. Accounts receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | | Coast Guard Captain's License | | 0.00 |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | | 1997 BMW 740 | | 13,300.00 |
| | | 1998 Volvo | | 8,000.00 |
| | | 1999 BMW M3 | | 16,000.00 |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories | X | | | |

FORM B6B
(10/89)

In re   Anthony Valenti
         ————————————————————
                  Debtor

Case 1:08-cr-00145-THK     Document 5-3     Filed 05/27/2008     Page 12 of 44

Case No. ————————————————
                                    (If known)

# SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 26. Office equipment, furnishings, and supplies. | X | | | |
| 27. Machinery, fixtures, equipment and supplies used in business. | X | | | |
| 28. Inventory. | X | | | |
| 29. Animals. | | dog and cats | J | 0.00 |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. Itemize. | X | | | |

_2_  continuation sheets attached                    Total ►        $ 74,300.00

(Include amounts from any continuation sheets attached. Report total also on Summary of Schedules.)

In re  Anthony Valenti _____ .  Case No. _____
_____
        Debtor.                                            (If known)

# SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemption to which debtor is entitled under:

(Check one box)

☐ 11 U.S.C. § 522(b)(1)     Exemptions provided in 11 U.S.C. § 522(d).     **Note:  These exemptions are available only in certain states.**

☑ 11 U.S.C. § 522(b)(2)     Exemptions available under applicable nonbankruptcy federal laws, state or local law where the debtor's domicile has been located for the 180 days immediately preceding the filing of the petition, or for a longer portion of the 180-day period than in any other place, and the debtor's interest as a tenant by the entirety or joint tenant to the extent the interest is exempt from process under applicable nonbankruptcy law.

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT MARKET VALUE OF PROPERTY, WITHOUT DEDUCTING EXEMPTIONS |
|---|---|---|---|
| 1997 BMW 740 | Debt. & Cred. Law § 282 | 2,400.00 | 13,300.00 |
| Household Goods and Furnishings | CPLR § 5205(a)(5) | 8,000.00 | 10,000.00 |
| IRA Account | CPLR § 5205(c), Debt. & Cred. Law § 282(2)(e) | 24,000.00 | 24,000.00 |
| Life Insurance Policies | Ins. Law § 3212, CPLR § 5206(i) | 0.00 | 0.00 |
| Residence in Merrick | CPLR § 5206(a) | 10,000.00 | 475,000.00 |
| Wearing Apparel | CPLR § 5205(a)(5) | 2,000.00 | 2,000.00 |

In re: Anthony Valenti _____ Case No. _____

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND MARKET VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO.  1000051402 <br> BMW Financial Services <br> Customer Service Center <br> P.O. Box 3608 <br> Dublin, OH 43016-0306 | X | | Lien on BMW <br> 1999 BMW <br><br> VALUE $16,000.00 | | | | 17,839.00 | 1,839.00 |
| ACCOUNT NO.  643401-20-134195-8 <br> Household Finance Realty Corp. of NY <br> 182 Sunrise Highway <br> Rockville Centre, NY 11570 | X | | Second Mortgage on Residence <br> Residence <br><br> VALUE $475,000.00 | | | | 21,000.00 | 0.00 |
| ACCOUNT NO.  528104001 <br> U.S. Small Business Administration <br> Little Rock Servicing Center <br> 2120 Riverfront Drive Suite 100 <br> Little Rock, AK 72202-1747 | X | | Collateral Mortgage on Residence <br> Residence <br><br> VALUE $475,000.00 | | | | 623,400.00 | 193,400.00 |
| ACCOUNT NO.  5009286146 <br> Washington Mutual Bank <br> P.O. Box 660139 <br> Dallas, TX 75266-0139 | X | | First Mortgage on Residence <br> Residence <br><br> VALUE $475,000.00 | | | | 24,000.00 | 0.00 |

0 Continuation sheets attached

Subtotal  ▸   $686,239.00
(Total of this page)

Total  ▸   $686,239.00
(Use only on last page)

(Report total also on Summary of Schedules)

In re:    Anthony Valenti                                                          Case No. _____
                            Debtor                                                              (If known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

☐   Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

TYPES OF PRIORITY CLAIMS        (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐   **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(2).

☐   **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $4,650* per person earned within 90 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(3).

☐   **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐   **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $4,650* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(5).

☐   **Deposits by individuals**

Claims of individuals up to $2,100* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(6).

☐   **Alimony, Maintenance, or Support**

Claims of a spouse, former spouse, or child of the debtor for alimony, maintenance, or support, to the extent provided in 11 U.S.C. § 507(a)(7).

☑   **Taxes and Certain Other Debts Owed to Governmental Units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐   **Commitments to Maintain the Capital of an Insured Depository Institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

☐   **Other Priority Debts**

* Amounts are subject to adjustment on April 1, 2004, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

                                    1   Continuation sheets attached

In re:    Anthony Valenti                                          Case No.
    _____                              _____
              Debtor                                                (If known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

☐   Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS**    (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

☐   **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(2).

☐   **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $4,650* per person earned within 90 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(3).

☐   **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐   **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $4,650* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(5).

☐   **Deposits by individuals**

Claims of individuals up to $2,100* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided.  11 U.S.C. § 507(a)(6).

☐   **Alimony, Maintenance, or Support**

Claims of a spouse, former spouse, or child of the debtor for alimony, maintenance, or support, to the extent provided in 11 U.S.C. § 507(a)(7).

☑   **Taxes and Certain Other Debts Owed to Governmental Units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐   **Commitments to Maintain the Capital of an Insured Depository Institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution.  11 U.S.C. § 507(a)(9).

☐   **Other Priority Debts**

* Amounts are subject to adjustment on April 1, 2004, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

1   Continuation sheets attached

In re:    Anthony Valenti                                        Case No. _____
          _____
                    Debtor                                              (If known)

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS
### (Continuation Sheet)

## Type of Priority:  Taxes and Certain Other Debts Owed to Governmental Units

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | TOTAL AMOUNT OF CLAIM | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. <br> Internal Revenue Services <br> Special Procedures <br> 10 Metrotech Center <br> Brooklyn, New York 11202 | | | withholding taxes- 2002-2003 | | | | 100,000.00 | 100,000.00 |
| ACCOUNT NO. <br> N Y S Department of Labor <br> P.O. Box 1411 <br> Albany, NY 10008 | | | unemployment contributions, 2002-2003 | | | | 18,400.00 | 18,400.00 |
| ACCOUNT NO. <br> N Y S Department of Tax & Finance <br> State Campus, Bldg 8 <br> Albany, New York 12227 | | | withholding taxes 2002-2003; sales tax | | | | 38,000.00 | 38,000.00 |

Sheet no. _1_ of _1_ sheets attached to Schedule of Creditors Holding Priority Claims

Subtotal        ➤  | $156,400.00 |
(Total of this page)

Total           ➤  | $156,400.00 |
(Use only on last page of the completed Schedule E.)

(Report total also on Summary of Schedules)

In re:  Anthony Valenti                                          Case No. _____
                    Debtor                                                        (If known)

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

☐  Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO.<br>**ADP Graphics**<br>c/o Lowenstein & Sandler PC<br>65 Livingston Ave.<br>Roseland, NJ 07068-1791 | X | H | business printing services | | | X | 130,568.82 |
| ACCOUNT NO.  3722-628439-02004<br>**American Express**<br>P.O. Box 360002<br>Ft. Lauderdale, FL 33336-0002 | X | H | Business Credit Card | | | | 16,947.00 |
| ACCOUNT NO.  3725-354595-81000<br>**American Express**<br>P.O. Box 360002<br>Ft. Lauderdale, FL 33336-0002 | X | H | Business Credit Card | | | | 18,338.00 |
| ACCOUNT NO.<br>**Banco Popular**<br>c/o Sankel, Skurman & McCartin, LLP<br>750 Third Avenue<br>New York ,NY 10017 | X | H | guarantee of business line of credit | | X | | 380,000.00 |
| ACCOUNT NO.<br>**ELK Investors**<br>641 Lexington Ave.<br>New York, NY 10022 | X | H | guarantor for commercial lease | | | | 90,000.00 |

_2_  Continuation sheets attached

Subtotal  ►          $635,853.82

Total  ►

# SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

(Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. <br><br> Karl Wessel <br> c/o Rattet & Pasternak LLP <br> 550 Mamaroneck Ave. <br> Harrisa, NY 10528 | X | H | stock purchase/indemnification | | | | 300,000.00 |
| ACCOUNT NO.   4371 <br><br> Kingery Printing Company <br> P.O. Box 727 <br> Effingham, Ill. 62407 | X | H | printing services | | | | 6,500.00 |
| ACCOUNT NO.   0002001450 <br><br> Lont & Overkamp Publishing Inc. <br> 332 North 6th Street <br> Prospect Park, NJ 07508 | X | H | business obligation | | | | 22,731.75 |
| ACCOUNT NO. <br><br> Oxford Health Plans <br> c/o D&B RMS <br> 77 Hartland St. Suite 401 <br> P.O. Box 280431 <br> East Hartford, CT 06128-0431 | X | H | Business Health Insurance | | | | 5,757.81 |
| ACCOUNT NO. <br><br> Pitney Bowes Credit Corp. <br> c/o Foster & Wolkind PC <br> 80 Fifth Ave. Suite 1401 <br> New York, NY 10011 | X | H | business purchase power | | | | 10,969.95 |

Sheet no. 1 of 2 continuation sheets attached to Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal ➤
(Total of this page)

Total ➤
(Use only on last page of the completed Schedule F.)

| $345,959.51 |
|---|
| |

In re: __Anthony Valenti_____     Case No. _____
                       Debtor                                      (If known)

# SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES

☑  Check this box if debtor has no executory contracts or unexpired leases.

| NAME AND MAILING ADDRESS, INCLUDING ZIP CODE, OF OTHER PARTIES TO LEASE OR CONTRACT. | DESCRIPTION OF CONTRACT OR LEASE AND NATURE OF DEBTOR'S INTEREST, STATE WHETHER LEASE IS FOR NONRESIDENTIAL REAL PROPERTY.  STATE CONTRACT NUMBER OF ANY GOVERNMENT CONTRACT. |
|---|---|
|  |  |

In re: <u>Anthony Valenti</u>                             Case No. _____

      Debtor                                                       (If known)

# SCHEDULE H - CODEBTORS

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| Ann Marie Valenti<br>1529 Stevens Ave<br>Merrick, NY 11566 | Household Finance Realty Corp. of NY<br>182 Sunrise Highway<br>Rockville Centre, NY 11570 |
| Ann Marie Valenti<br>1529 Stevens Ave.<br>Merrick, NY 11566 | Washington Mutual Bank<br>P.O. Box 660139<br>Dallas, TX 75266-0139 |
| Anne Marie Valenti<br>1529 Stevens Avenue<br>Merrick, New York  11566 | U.S. Small Business Administration<br>Little Rock Servicing Center<br>2120 Riverfront Drive Suite 100<br>Little Rock, AK 72202-1747 |
| Jack Ward Color<br>220 E. 23rd Street<br>New York, NY 10010<br><br>Jack Ward Color<br>220 E. 23rd Street<br>New York, NY 10010 | American Express<br>P.O. Box 360002<br>Ft. Lauderdale, FL 33336-0002 |
| Jack Ward Color<br>220 E. 23rd Street<br>New York, NY 10010 | Lont & Overkamp Publishing Inc.<br>332 North 6th Street<br>Prospect Park, NJ 07508 |
| Jack Ward Color<br>220 E. 23rd Street<br>New York, NY 10010 | ELK Investors<br>641 Lexington Ave.<br>New York, NY 10022 |
| Jack Ward Color Service Inc<br>220 E. 23rd Street<br>New York, NY 10010 | U.S. Small Business Administration<br>Little Rock Servicing Center<br>2120 Riverfront Drive Suite 100<br>Little Rock, AK 72202-1747 |
| Jack Ward Color Service inc<br>220 E. 23rd Street<br>New York, NY 10010 | Karl Wessel<br>c/o Rattet & Pasternak LLP<br>550 Mamaroneck Ave.<br>Harrisa, NY 10528 |
| Jack Ward Color Service Inc.<br>220 E. 23rd Street<br>New York, NY 10010 | BMW Financial Services<br>Customer Service Center<br>P.O. Box 3608<br>Dublin, OH 43016-0306 |
| Jack Ward Color Service Inc.<br>220 E. 23rd Street<br>New York, NY 10010 | Banco Popular<br>c/o Sankel, Skurman & McCartin, LLP<br>750 Third Avenue<br>New York ,NY 10017 |
| Jack Ward Color Service Inc.<br>220 E. 23rd Street<br>New York, NY 10010 | Kingery Printing Company<br>P.O. Box 727<br>Effingham, Ill. 62407 |

In re: Anthony Valenti_____    ,    Case No. _____
      Debtor                                                              (If known)

# SCHEDULE H - CODEBTORS

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| Jack Ward Color Services inc<br>220 e. 23rd Street<br>New York, NY 10010 | Oxford Health Plans<br>c/o D&B RMS<br>77 Hartland St. Suite 401<br>P.O. Box 280431<br>East Hartford, CT 06128-0431 |
| Jack Ward Color Services Inc<br>220 E. 23rd Street<br>New York, NY 10010 | ADP Graphics<br>c/o Lowenstein & Sandler PC<br>65 Livingston Ave.<br>Roseland, NJ 07068-1791 |
| Jack Ward Color Services Inc.<br>220 E. 23rd Street<br>New York, NY 10010 | Xerox Capital Services<br>P.O. Box 650361<br>Dallas, TX 75265-0361 |
| Jack Ward Color Services Inc.<br>220 E. 23rd Street<br>New York, NY 10010 | Pitney Bowes Credit Corp.<br>c/o Foster & Wolkind PC<br>80 Fifth Ave. Suite 1401<br>New York, NY 10011 |
| Karl Wessel<br>c/o Rattet & Pasternack  LLP<br>550 Mamaroneck Ave.<br>Harissa, NY 10528 | ELK Investors<br>641 Lexington Ave.<br>New York, NY 10022 |
| Karl Wessel<br>c/o Rattet & Pasternack<br>550 Mamaroneck Ave.<br>Harissa, NY 10528 | Lont & Overkamp Publishing Inc.<br>332 North 6th Street<br>Prospect Park, NJ 07508 |
| Karl Wessel<br>c/o Rattet & Pasternack<br>550 Mamaroneck Ave.<br>Harissa, NY 10528 | U.S. Small Business Administration<br>Little Rock Servicing Center<br>2120 Riverfront Drive Suite 100<br>Little Rock, AK 72202-1747 |
| Karl Wessel<br>c/o Rattet & Pasternack  LLP<br>550 Mamaroneck Ave.<br>Harissa, NY 10528 | Kingery Printing Company<br>P.O. Box 727<br>Effingham, Ill. 62407 |
| Karl Wessel<br>c/o Rattet & Pasternack<br>550 Mamaroneck Ave.<br>Harissa, NY 10528 | Banco Popular<br>c/o Sankel, Skurman & McCartin, LLP<br>750 Third Avenue<br>New York ,NY 10017 |
| Karl Wessel<br>c/o Rattet & Pasternak LLP<br>550 Mamaroneck Ave.<br>Harissa, NY 10528 | ADP Graphics<br>c/o Lowenstein & Sandler PC<br>65 Livingston Ave.<br>Roseland, NJ 07068-1791 |
| Karl Wessel<br>c/o Rattet & Pasternack LLP<br>550 Mamaroneck Ave.<br>Harissa, NY 10528 | Oxford Health Plans<br>c/o D&B RMS<br>77 Hartland St. Suite 401<br>P.O. Box 280431<br>East Hartford, CT 06128-0431 |

In re: <u>Anthony Valenti</u>                ,    Case No. _____
      Debtor                                                      (If known)

# SCHEDULE H - CODEBTORS

☐ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
|---|---|
| Karl Wessel<br>*c/o* Rattet & Pasternack LLP<br>550 Mamaroneck Ave.<br>Harissa, NY 10528 | Xerox Capital Services<br>P.O. Box 650361<br>Dallas, TX 75265-0361 |

In re    Anthony Valenti _____ , Case No. _____
_____
Debtor                                                                      (If known)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

| Debtor's Marital Status: **Married** | DEPENDENTS OF DEBTOR AND SPOUSE | | |
|---|---|---|---|
| Debtor's Age: Spouse's Age: | NAMES **Alex** | AGE **19** | RELATIONSHIP **daughter** |

| EMPLOYMENT: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Salesman** | **Director of Secretarial Services** |
| Name of Employer | **4 months** | |
| How long employed | **Ocean Outboard** | **Sidley Austin et al** |
| Address of Employer | **Merrick, NY** | **787 Seventh Ave. New York, NY 10019** |

| Income: (Estimate of average monthly income) | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| Current monthly gross wages, salary, and commissions (pro rate if not paid monthly.) | $ | 1,666.00 | $ | 10,256.00 |
| Estimated monthly overtime | $ | 0.00 | $ | 0.00 |
| SUBTOTAL | $ | 1,666.00 | $ | 10,256.00 |
| LESS PAYROLL DEDUCTIONS | | | | |
| a. Payroll taxes and social security | $ | 0.00 | $ | 4,446.00 |
| b. Insurance | $ | 0.00 | $ | 0.00 |
| c. Union dues | $ | 0.00 | $ | 0.00 |
| d. Other (Specify) _____ | $ | 0.00 | $ | 0.00 |
| SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 0.00 | $ | 4,446.00 |
| TOTAL NET MONTHLY TAKE HOME PAY | $ | 1,666.00 | $ | 5,810.00 |
| Regular income from operation of business or profession or farm (attach detailed statement) | $ | 0.00 | $ | 0.00 |
| Income from real property | $ | 0.00 | $ | 0.00 |
| Interest and dividends | $ | 0.00 | $ | 0.00 |
| Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above. | $ | 0.00 | $ | 0.00 |
| Social security or other government assistance (Specify) _____ | $ | 0.00 | $ | 0.00 |
| Pension or retirement income | $ | 0.00 | $ | 0.00 |
| Other monthly income (Specify) **commissions (average)** | $ | 1,500.00 | $ | |
| TOTAL MONTHLY INCOME | $ | 3,166.00 | $ | 5,810.00 |

TOTAL COMBINED MONTHLY INCOME _____ $ 8,976.00 _____ (Report also on Summary of Schedules)

Describe any increase or decrease of more than 10% in any of the above categories anticipated to occur within the year following the filing of this document:                    **NONE**

Form B6J
(6/90)

In re   **Anthony Valenti**                                                    Case No. _____
        ────────────────────────────────────────────                              (If known)
        Debtor

# SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)

☐   Check this box if a joint petition is filed and debtor's spouse maintains a separate household.  Complete a separate
schedule of expenditures labeled "Spouse".

| | | |
|---|---|---:|
| Rent or home mortgage payment (include lot rented for mobile home) | $ | 2,700.00 |
| Are real estate taxes included?   Yes ✓   No _____ | | |
| Is property insurance included?   Yes ✓   No _____ | | |
| Utilities    Electricity and heating fuel | $ | 340.00 |
|              Water and sewer | $ | 60.00 |
|              Telephone | $ | 80.00 |
|              Other   Cable TV/Direct TV | $ | 160.00 |
| Home maintenance (repairs and upkeep) | $ | 100.00 |
| Food | $ | 600.00 |
| Clothing | $ | 200.00 |
| Laundry and dry cleaning | $ | 80.00 |
| Medical and dental expenses | $ | 300.00 |
| Transportation (not including car payments) | $ | 400.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | $ | 100.00 |
| Charitable contributions | $ | 0.00 |
| Insurance (not deducted from wages or included in home mortgage payments) | | |
|              Homeowner's or renter's | $ | 0.00 |
|              Life | $ | 255.00 |
|              Health | $ | 0.00 |
|              Auto | $ | 505.00 |
|              Other   umbrella policy | $ | 148.00 |
|                      wife's boat insurance | $ | 126.00 |
| Taxes (not deducted from wages or included in home mortgage payments) | | |
| (Specify) _____ | $ | 0.00 |
| Installment payments: (In chapter 12 and 13 cases, do not list payments to be included in the plan) | | |
|              Auto | $ | 687.00 |
|              Other   Estimated Income Taxes- 1099 Income | $ | 500.00 |
| Alimony, maintenance or support paid to others | $ | 0.00 |
| Payments for support of additional dependents not living at your home | $ | 2,000.00 |
| Regular expenses from operation of business, profession, or farm (attach detailed statement) | $ | 0.00 |
| Other   auto maintenance | $ | 150.00 |
|         cell phones | $ | 150.00 |
|         miscelleneous (haircuts, cosmetics) | $ | 100.00 |
|         pet care | $ | 100.00 |
|         wife's boat loan | $ | 529.00 |
|         wife's boat maintenance/dockage | $ | 400.00 |
|         wife's credit cards | $ | 150.00 |

| | | |
|---|---|---:|
| TOTAL MONTHLY EXPENSES (Report also on Summary of Schedules) | $ | 10,920.00 |

**[FOR CHAPTER 12 AND 13 DEBTORS ONLY]**

Provide the information requested below, including whether plan payments are to be made bi-weekly, monthly, annually, or at
some other regular interval.

| | | |
|---|---|---|
| A. Total projected monthly income | $ | _____ |
| B. Total projected monthly expenses | $ | _____ |
| C. Excess income (A minus B) | $ | _____ |
| D. Total amount to be paid into plan each _____ | $ | _____ |
|                                              (interval) | | |

In re:   Anthony Valenti                                                    Case No.
         xxxxx7223

# DECLARATION CONCERNING DEBTOR'S SCHEDULES

## DECLARATION UNDER PENALTY OF PERJURY BY INDIVIDUAL DEBTOR

I declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of     16  sheets plus the summary
page, and that they are true and correct to the best of my knowledge, information, and belief.

Date: _____7/9/01_____          Signature _Anthony Valenti_____

                                              Anthony Valenti

                                    [If joint case, both spouses must sign]

## DECLARATION UNDER PENALTY OF PERJURY
## ON BEHALF OF CORPORATION OR PARTNERSHIP

### (NOT  APPLICABLE)

Penalty for making a false statement or concealing property. Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C §§ 152
and 3571.

Form B6
(6/90)

# United States Bankruptcy Court
## Eastern District of New York

In re    **Anthony Valenti**

Case No.

Chapter    **7**

# SUMMARY OF SCHEDULES

AMOUNTS SCHEDULED

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | YES | 1 | $ 475,000.00 | | |
| B - Personal Property | YES | 3 | $ 74,300.00 | | |
| C - Property Claimed as Exempt | YES | 1 | | | |
| D - Creditors Holding Secured Claims | YES | 1 | | $ 686,239.00 | |
| E - Creditors Holding Unsecured Priority Claims | YES | 2 | | $ 156,400.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | YES | 3 | | $ 1,111,813.33 | |
| G - Executory Contracts and Unexpired Leases | YES | 1 | | | |
| H - Codebtors | YES | 2 | | | |
| I - Current Income of Individual Debtor(s) | YES | 1 | | | $ 8,976.00 |
| J - Current Expenditures of Individual Debtor(s) | YES | 1 | | | $ 10,920.00 |
| Total Number of sheets in ALL Schedules ➤ | | 16 | | | |
| Total Assets ➤ | | | $ 549,300.00 | | |
| Total Liabilities ➤ | | | | $ 1,954,452.33 | |

UNITED STATES BANKRUPTCY COURT

### Eastern District of New York

In re:  Anthony Valenti

xxxxx7223

Case No. _____

Chapter      7

# STATEMENT OF FINANCIAL AFFAIRS

## 1.  Income from employment or operation of business

None ☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year.  (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.)  If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE | FISCAL YEAR PERIOD |
|---|---|---|
| 20,000.00 | Wages | 2003 |
| 25,000.00 | Wages/Commissions | 2004 |
| 30,000.00 | Wages | 2002 |

## 2.  Income other than from employment or operation of business

None ☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case.  Give particulars.  If a joint petition is filed, state income for each spouse separately.  (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE | FISCAL YEAR PERIOD |
|---|---|---|
| 10,000.00 | Tax refunds | 2003 |

## 3.  Payments to creditors

None ☐

a.  List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than **$600** to any creditor, made within **90 days** immediately preceding the commencement of this case.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|
| BMW Financial Services | 4/04-6/04 | 2,061.00 | 17,839.00 |
| HFC Realty | 4/04-6/04 | 648.00 | 21,000.00 |
| Washington Mutual | 4/04-6/04 | 7,000.00 | 24,000.00 |

b.  List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None ☑

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

---

### 4. Suits and administrative proceedings, executions, garnishments and attachments

None ☐

a.  List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|
| ADP Graphics v. Valenti | Commercial guarantee | Superior, NJ | pending |
| Banco Popular v. Valenti | Commercial guarantee | Supreme, NY | pending |

---

b.  Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None ☑

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

### 5. Repossessions, foreclosures and returns

None ☑

List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

---

### 6. Assignments and receiverships

None ☑

a.  Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

b.  List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

None
☑

| NAME AND ADDRESS OF CUSTODIAN | NAME AND ADDRESS OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|
| | | | |

## 7.  Gifts

None
☑

List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|
| | | | |

## 8.  Losses

None
☐

List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|
| 1999 BMW M3 | Car Accident- damages $6,400.00 Insurance coverage- $5,800.00 | 05/12/2004 |

## 9.  Payments related to debt counseling or bankruptcy

None
☐

List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of a petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| Jeff Morgenstern, Esq. One Old Country Road Carle Place, NY 11514 | March-June 2004 | 7439.00 |

## 10.  Other transfers

None
☐

a.  List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| | | |

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|
| Ann Marie Valenti (spouse) | 05/01/2004 | 1995 mainship with assumption of secured loan |
| Ann Marie Valenti (spouse) | 04/01/2004 | Jointly held shares of GM (value $8,000.00) in exchange for Satisfaction of $7,000.00 judgment. |

## 11. Closed financial accounts

None ☑

List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE AND NUMBER OF ACCOUNT AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

## 12. Safe deposit boxes

None ☑

List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

## 13. Setoffs

None ☑

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

## 14. Property held for another person

None ☑

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

## 15. Prior address of debtor

None
☑

If the debtor has moved within the **two years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---------|-----------|--------------------|

## 16. Spouses and Former Spouses

None
☑

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the **six-year period** immediately preceding the commencement of the case, identify the name of the debtor 's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

## 17. Environmental Information.

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law.

a.     List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law.

None
☑

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|-----------------------|---------------------------------------|----------------|-------------------|

b.     List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

None
☑

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|-----------------------|---------------------------------------|----------------|-------------------|

c.     List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

None
☑

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---------------------------------------|---------------|-----------------------|

## 18. Nature, location and name of business

None □   a.   If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the **six years** immediately preceding the commencement of this case.

If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the business, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the **six years** immediately preceding the commencement of this case.

If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the business, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the **six years** immediately preceding the commencement of this case.

| NAME | TAXPAYER I.D. NUMBER | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|
| Ink & Ideas | 13-389-3715 | 220 E. 23rd Street New York, NY 10010 | printing/graphics | 01/01/2002 02/01/2004 |
| Jack Ward Color Serv | 13-180-1237 | 220 E. 23rd Street New York, NY 10010 | printing/graphics | 01/01/1954 02/01/2004 |
| Jack Ward Digital Inc. | 41-204-6896 | 220 E. 23rd Street New York, NY 10010 | printing/graphics | 01/01/1954 02/01/2004 |
| Slide Shop inc. | 13-286-4853 | 220 E. 23rd Street New York, NY 10010 | printing/graphics | 01/01/1954 02/01/2004 |

b.   Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

None ☑

| NAME | ADDRESS |
|---|---|

## 19. Books, records and financial statements

None □   a.  List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|
| Louis Perotta Rockville Centre, NY | 1994-2004 |

b.  List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

None ☑

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|

c.  List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

None □

| NAME | ADDRESS |
|---|---|
| Debtor | Merrick, New York |

d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued within the **two years** immediately preceding the commencement of this case by the debtor.

None
☑

| NAME AND ADDRESS | DATE ISSUED |
|---|---|

## 20. Inventories

None
☑

a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
|---|---|---|

b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

None
☑

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
|---|---|

## 21. Current Partners, Officers, Directors and Shareholders

None
☑

a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|---|---|---|

b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting securities of the corporation.

None
☑

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|

## 22. Former partners, officers, directors and shareholders

None
☑

a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

None
☑

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

## 23. Withdrawals from a partnership or distributions by a corporation

None
☑

If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

## 24. Tax Consolidation Group.

None
☑

If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within the **six -year period** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER |
|---|---|

## 25. Pension Funds.

None
☑

If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within the **six-year period** immediately preceding the commencement of the case.

| NAME OF PENSION FUND | TAXPAYER IDENTIFICATION NUMBER |
|---|---|

\* \* \* \* \* \*

*[if completed by an individual or individual and spouse]*
I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct.

Date _____ 7/4/ _____     Signature of Debtor _____ Anthony Valenti

UNITED STATES BANKRUPTCY COURT

Eastern District of New York

In re:  Anthony Valenti

xxxxx7223

Case No.  _____

Chapter      7

# CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

1.  I have filed a schedule of assets and liabilities which includes consumer debts secured by property of the estate.

2.  I intend to do the following with respect to the property of the estate which secures those consumer debts:

   a.  *Property To Be Surrendered.*

   Description of Property                                    Creditor's Name

   **None**

   b.  *Property To Be Retained.*                            *[Check any applicable statement.]*

| Description of Property | Creditor's Name | Property is claimed as exempt | Property will be redeemed pursuant to 11 U.S.C. § 722 | Debt will be reaffirmed pursuant to 11 U.S.C. § 524(c) | Other |
|---|---|---|---|---|---|
| 1. 1999 BMW | BMW Financial Services | | | | |
| 2. Residence | Household Finance Realty Corp. of NY | | | | |
| 3. Residence | U.S. Small Business Administration | | | | |
| 4. Residence | Washington Mutual Bank | | | | |

Date:  _____7/9/07_____

Signature of Debtor

UNITED STATES BANKRUPTCY COURT

**Eastern District of New York**

In re:    Anthony Valenti
          xxxxx7223

Debtor

Case No. _____
Chapter    7

# DISCLOSURE OF COMPENSATION OF ATTORNEY
# FOR DEBTOR

1. Pursuant to 11 U.S.C. § 329(a) and Bankruptcy Rule 2016(b), I certify that I am the attorney for the above-named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

   For legal services, I have agreed to accept          $         7,439.00

   Prior to the filing of this statement I have received    $         7,439.00

   Balance Due                                          $             0.00

2. The source of compensation paid to me was:

   ☒ Debtor                    ☐ Other (specify)

3. The source of compensation to be paid to me is:

   ☐ Debtor                    ☐ Other (specify)

4. ☒ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

   ☐ I have agreed to share the above-disclosed compensation with a person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

   a) Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

   b) Preparation and filing of any petition, schedules, statement of affairs, and plan which may be required;

   c) Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

   d) [Other provisions as needed]
      **None**

6. By agreement with the debtor(s) the above disclosed fee does not include the following services:

   **adversary proceedings and contested matters.**

---

### CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

Dated: ___7/9/04___

_____

**Jeff H. Morgenstern, Bar No.  4163**

**Jeff H. Morgenstern**
Attorney for Debtor(s)

---

DESCRIPTION OF PRE-PETITION SERVICES*
PURSUANT TO LOCAL RULE 2017-1

| DATE | HOURS | MATTER |
|------|-------|--------|
| 03/05/04 | 2.5 | Initial conference to review finances (personal and business); |
| 06/24/04 | 2.0 | Follow-up Conference with debtor re status of personal finances, bankruptcy and other alternatives; |
| 06/28/04 | 1.0 | Conferences with debtor to compile information for filing; (personal and business) (earnings, budget, assets & liabilities, etc.); |
| 06/29/04 | 1.5 | Preparation of Petition, Schedules, Statement of Affairs; review/analysis of documents gathered on monthly budget, creditors, earnings and assets;; |
| 06/29/04 | 1.0 | Revisions to Petition and Schedules |
| 07/09/04 | 1.0 | Meeting with debtor; review and execution of Petition, review of procedures in Chapter 7 proceeding. |

## ADDITIONAL SERVICES TO BE RENDERED:

Filing of petition; preparation of
debtor for, and appearance at 341 meeting;
responses to inquiries of Trustee and production of
documents; follow-up for discharge

Anticipated time for additional services:  5.0 Hrs.
Billing Rate                                $250.00/Hr.

Jeff Morgenstern

* Includes representation in State Court matters of Banco Popular v. Valenti and ADP Graphics v. Valenti -fees and costs paid=$3,730.00

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

One Pierrepont Plaza
Brooklyn, New York 11201

Mailing Address:   147 Pierrepont Street
Brooklyn, New York 11201

March 28, 2005

BY FAX: (516) 719-7280

Jeff Morgenstern
1 Old Country Road
Suite 320
Carle Place, New York 11514

Re:  Anthony and Ann Marie Valenti
     1529 Stevens Avenue
     North Merrick, New York

Dear Mr. Morgenstern:

Per our conversations, this letter will serve as notice that the U.S. Small Business Administration (SBA) has agreed to release its mortgage on the above referenced premises and the guarantees of Anthony and Ann Marie Valenti for the net proceeds from the $279,000.00 mortgage refinancing of the premises less the amount due on the two senior mortgages which you have informed is approximately $38,000.00 and reasonable closing costs.

Very truly yours

ROSLYNN R. MAUSKOPF
United States Attorney
Eastern District of New York

By: _____
    William Young
    Special Assistant U.S. Attorney
    (718)254-6057

Home Credit Corp.
One Old Country Road, 300, Carle Place NY

DATE: April 5, 2005

MORTGAGOR(S):    ANN MARIE VALENTI

PROPERTY ADDRESS:    1529 STEVENS AVENUE , MERRICK, NY 11566
MORTGAGE AMOUNT:    $279,000.00

## MORTGAGE PROCEEDS DRAWN AS FOLLOWS:

| CHECK # | FOR | PAYEE | AMOUNT |
|---|---|---|---|
| | MORTGAGE ESCROW | eHome Credit Corp. | 1834.56 |
| | CLOSING COSTS | eHome Credit Corp. | 6462.60 |
| | TITLE COSTS | Broadway Abstract | 7333.77 |
| | SAT. OF MORTGAGE | Washington Mutual | 17,422.35 |
| | | HFC | 19,715.78 |
| | REAL ESTATE BROKER | Treasury of the United States | 222,580.9 |
| | BANK LEGAL | Consumer Settlement Services Corp. | |
| | MIP | eHome Credit Corp. | 850.00 |
| | TITLE COSTS | | |
| | | Cheryl Luke | 300.00 |
| | | Jeffrey Morganstern, Esq. | 2500.00 |
| | TOTAL | | $279,000.00 |

THE MORTGAGE PROCEEDS CHECKS AS SET FORTH HEREIN ARE HEREBY AUTHORIZED AND
APPROVED BY THE UNDERSIGNED.

X Ann Marie Valenti
ANN MARIE VALENTI

Broadway Abstract
$767.50

A-4

Address _seven thousand five hundred_
_ninety five_                              Dollars $ 7,594.98

**For** _Paid in full subject to clearance._

|  |  |  |
|---|---|---|
| **ACCOUNT** | **HOW PAID** | M118798 |

| AMT OF ACCOUNT | | CASH | |
|---|---|---|---|
| AMT PAID | | CHECK | 7594.98 |
| BALANCE DUE | | MONEY ORDER CREDIT CARD ☐ | By _Jessica_ |

MARTIN A. BIENSTOCK
35-35 Bell Boulevard
P.O. Box 610700
BAYSIDE, NY 11361-0700
(718) 279-3600

CRB 111-3

---

**JPMorgan Chase Bank**
Buffalo, NY 14202

**◆ CHASE**    10-84 / 220    **0203208447**

ANN MARIE VALENTI    DECEMBER 23 03

Date _____

Pay to the order of  MARTIN A. BIENSTOCK, MARSHALL    $ *****7,594.98

Amount  $*******7,594AND98CENTS    U.S. Dollars

OFFICIAL CHECK

Acct. #: _____
36-35 BELL BLVD
BAYSIDE, NY 11361

12/23/03    $7,594.98

**NON-NEGOTIABLE**

If not used as intended redeposit to your account.
**Do not** destroy your check.    CUSTOMER COPY

⑈0203208447⑈ ⑆022000842⑉6016000026⑈

02 3691 (10-01)

---

**◆ CHASE**    **REQUEST FOR OFFICIAL CHECK**

DATE __12/23/03__

☐ Checking/MMA    ☒ Regular/Passbook Savings
☐ High Yield Savings

Amount _Seven thousand five hundred ninety-four_
_& 98/100_
(PRINT THE AMOUNT IN WORDS HERE)

| | DOLLARS | CENTS |
|---|---|---|
| **DOLLAR AMOUNT** | $7,594. | 98 |

**TO:** PAYEE'S NAME (PRINT CLEARLY)
_Martin A. Bienstock  Marshall_

PAYEE'S ADDRESS (No. & Street)    CITY    STATE    ZIP CODE
_36-35    Bell Blvd.  Bayside  NY  11361_

| **FOR BANK USE ONLY** | | |
|---|---|---|
| FEE AMOUNT (IF APPLICABLE) | $ | |
| TOTAL DEBIT AMOUNT | $ | |
| OFFICIAL CHECK NUMBER | | |

I authorize JPMorgan Chase Bank to debit my account and issue an Official Check as described above.

CUSTOMER'S NAME (PRINT)    CUSTOMER'S ACCOUNT NUMBER
_Ann Marie Valenti_    386 000 275401

CUSTOMER SIGNATURE
_Ann Marie Valenti_

02 2702 (11-01)

DATE OF NOTICE: 12/24/2003
Page 1 of 1

ANTOINETTE DALOIA
ANN MARIE VALENTI
1529 STEVENS AVE
MERRICK NY  11566-2238

**Select Banking Customer Service** SM
**1-800-832-2088**
24 hour automated account information
Personal assistance 6 a.m. - midnight ET
Hearing impaired call 1-800-CHASETD

## FUNDS AVAILABILITY NOTICE

| Account Number | Date of Deposit | Amount |
| --- | --- | --- |
| 386-0006754-01 | 12/24/2003 | $7,550.00 |

When you deposit more than $7,500.00 on a single day in checks not drawn on JPMorgan Chase your deposit is subject to a different availability schedule. Federal Banking regulations require us to send you a listing (see below) showing when the funds you deposited will be available to pay checks. Customers with personal accounts who want to withdraw cash may have to wait one additional day to withdraw the full amount.

| Date | Amount | Date | Amount | Date | Amount |
| --- | --- | --- | --- | --- | --- |
| 12/26/2003 | $100.00 | 12/31/2003 | $7,400.00 | 01/02/2004 | $50.00 |

Please contact the Select Banking customer service number listed above for further information

Exhibit A 

| Prepared For | Account Number | Closing Date |
| --- | --- | --- |
| ANN MARIE VALENTI | 3710-366577-71000 | 10/23/03 |

| Previous Balance $ | Payments/Credits $ | New Charges $ | New Balance $ | Please Pay By 11/07/03 |
| --- | --- | --- | --- | --- |
| 803.19 | -803.19 | 15,308.07 | 15,308.07 | Please refer to page 2 for important information regarding your account |

Your payment is due in full. Please pay by 11/07/03.

Contact us at www.americanexpress.com or call Customer Service at 1-800-528-4800.

### Pay Your Bill Easily--Online

You can pay all your charges anytime, and anywhere. When you sign up to pay your bill online, you'll have direct 24/7 access to your account. All you have to do is log on to view your statement, pay your bill, and receive an instant payment confirmation in a matter of seconds. Plus, your account information is protected by state-of-the-art encryption technology, so you feel secure. Sign up today at **www.americanexpress.com/paycardbill**

## Activity  * Indicates posting date

### New Activity for ANN MARIE VALENTI
Card XXXX-XXXXX7-71000

| | | | Amount $ |
| --- | --- | --- | --- |
| 10/07/03* | PAYMENT RECEIVED - THANK YOU | | -803.19 |
| 10/05/03 | PUGLIESE VINEYARDS ICUTCHOGUE    NY | | 53.83 |
| | WINE/CHEESE/ACC | | |
| 10/08/03 | COLONIAL FLR. & GIFTNORTH BELLMOR    NY | | 68.51 |
| | FLORAL PURCHASE | | |
| | FOR QUESTIONS CALL: 516/785-2069 | | |
| 10/13/03 | TOWNSEND MANOR INN IGREENPORT    NY | | 1,130.10 |
| | GIFT SHOP | | |
| 10/19/03 | MARRIOTT 33770WSTENDWASHINGTON    DC | | 381.22 |

| Arrival Date | Departure Date | No of Nights |
| --- | --- | --- |
| 10/17/03 | 10/19/03 | 2 |
| LODGING | | |

| Total of New Activity for ANN MARIE VALENTI | New Charges | 1,633.66 |
| --- | --- | --- |
| | Payments/Credits | -803.19 |

**New Activity for ANTHONY VALENTI**
Card XXXX-XXXXX7-72016

| | | | Amount $ |
|---|---|---|---:|
| 09/23/03 | HOMESTEAD TECHNOLOGI 800-797-2958   CA<br>WEB SITE BUILDING | | 9.99 |
| 10/12/03 | ANTARES CAFE     GREENPORT   NY<br>00/FOOD AND BEVERAGE | | 73.00 |
| | FOOD | 62.00 | |
| | TIP | 11.00 | |
| 10/17/03 | XEROX       ROCHESTER   NY<br>10010<br>EQUIPMENT | | 13,546.42 |
| 10/19/03 | EZPASS PREPAID TOLL 800-333-8655   NY<br>TOLL FEES | | 45.00 |

| | | |
|---|---|---:|
| **Total of New Activity for ANTHONY VALENTI** | New Charges<br>Payments/Credits | 13,674.41<br>0.00 |
| **Total of New Activity** | **New Charges**<br>**Payments/Credits** | **15,308.07**<br>**-803.19** |



| Previous Balance $ | Payments/Credits $ | New Charges $ | New Balance $ | Please Pay Immediately |
|---|---|---|---|---|
| 26,844.00 | -25.84 | 135.76 | 26,953.92 | Please refer to page 2 for important information regarding your account |

Your account is 30 days past due. Payment must be received by 01/06/04 to avoid a delinquency charge. If payment has been sent, thank you.

Contact us at www.americanexpress.com or call Customer Service at 1-800-528-4800.

 Because your payment was received late, you may have forfeited *Membership Rewards®* points. Please visit our website at americanexpress.com/rewards or call 1-800-AXP-EARN (297-3276) for more information or to reinstate points. There is a $15.00 fee for each month of points you want to reinstate.

### Pay Now or Pay Later - It's Your Choice

Here's something you might not be aware of--your American Express® Card is much more than a Charge Card. In fact, if you don't want to pay all of your charges in full each month, you don't have to. With the convenient flexible payment option, you can choose to pay eligible purchases in full or you can pay a minimum amount due. Or anything in between. It's your choice. To enroll or for more information, please call **1-800-528-4800** or visit **www.americanexpress.com/payovertime**

Additional Terms & Conditions apply.

## Activity  * Indicates posting date

**New Activity for ANN MARIE VALENTI**
Card XXXX-XXXXX7-71000

| | | Amount $ |
|---|---|---|
| 12/10/03* | MEM RWDS ANNUAL PROGRAM FEE CREDIT GOODS AND SERVICES | -16.67 |
| 12/10/03* | MEM RWDS CORP CARD LINKAGE FEE CREDIT GOODS AND SERVICES | -9.17 |
| 12/01/03 | BBB #260      WESTBURY      NY DEPARTMENT STORES | 44.41 |
| 12/10/03* | MEM RWDS CORP CARD LINKAGE FEE GOODS AND SERVICES | 10.00 |

Please fold on the perforation below, detach and return with your payment      Continued on

Ann Marie Valenti
1529 Stevens Avenue
Merrick NY 11566-2238

03667

1-866-892-8604

January 29, 2004

ılıllıllıllıllıllııllılılıllılıllıllı

Dear Ann Marie Valenti:

*We are contacting you because:*

**Your account is past due.**

- Personal                 3710-381557-71000

and

**We have noticed activity on your accounts that is not typical of your normal charging pattern.**

- Personal                 3710-381557-71000
- Gold                     3715-767592-71000

The condition of any one of your American Express® Accounts impacts our credit decision on any other account that you have with us.

As a result, **new charges will be declined** on the accounts listed within the Account Summary section. Please advise your Additional Cardmember(s) if there are any on the account(s) listed that their new charges will also be declined. Payments are due by the payment due date as reflected on your most recent billing statements.

*You need to:*

**Call us at 1-866-892-8604 so that we can discuss your accounts.** A representative is available to assist you Monday through Thursday 8:00 AM - 11:00 PM, Friday 8:00 AM - 6:00 PM, Saturday 8:00 AM - 5:00 PM and Sunday 1:00 PM - 9:00 PM, Eastern Time.

## Account Summary

| Product | Account Number | Past Due | + | New Billed Charges* | = | Total |
|---------|----------------|----------|---|---------------------|---|-------|
| Personal | 3710-381557-71000 | **$26,453.92** | | $845.97 | | $27,299.89 |
| Gold | 3715-767592-71000 | **$0.00** | | $0.00 | | $0.00 |
| | Total | **$26,453.92** | | $845.97 | | $27,299.89 *current* |

Fold here I, detach, and return with your payment.                                                    NCCCCCPD  C90

---

Payment Coupon for
Ann Marie Valenti

**Past Due Amount
Due Immediately**

| Product | Account Number | Amount Enclosed |
|---------|----------------|-----------------|
| Personal | 3710-381557-71000 | $ __ __ __,__ __ __.__ __ |
| | Total | $ __ __ __,__ __ __.__ __ |

*Please refer to your most recent billing statement(s) for specific Payment Due Date(s) and amount(s) due. For Lending Accounts or Flexible Payment Features, this amount represents your minimum due Amount.

To ensure proper credit, you <u>must</u> enter the amount you are paying for each account listed on this Payment Coupon.

Please send one check, payable to American Express, with this Payment Coupon. Payment is due in U.S. Dollars.

Check here if your address or telephone number has changed. Note changes on the reverse side of this coupon. ☐

**Overnight Mail Address**
**Attn:** US Payment FL
American Express
2965 W Corporate Lakes Blvd
Weston, FL 33331-3626

American Express
PO Box 5207
Ft. Lauderdale, FL 33310-5207

0000371038155771000 002729989002645392 29AA

PLEASE PRINT THE CORRECT
ADDRESS ON THE BACK OF THIS
STUB AND RETURN TO THE
ADDRESS TO THE LEFT.

RETIREE SERVICES
P.O. BOX 5149
BOSTON, MA 02206-5149

ANN M VALENTI
1529 STEVENS AVENUE
MERRICK, NY 11566

| ACCOUNT ID: | SOLUTIONS | 624007 |
| Plan Name: | SIDLEY AUSTIN BROWN & WOOD | |

## PAYEE INFORMATION

| PAYMENT DATE | CHECK NO. | PAYEE SOC. SEC. NO. | NET PAYMENT |
| --- | --- | --- | --- |
| 07/27/05 | 9924899 | 057-50- **** | $35,102.39 |

## PAYMENT DETAIL

| PAYMENT INFORMATION | Current | TAX REPORTING INFORMATION | Current |
| --- | --- | --- | --- |
| GROSS PAYMENT AMOUNT | 56,616.74 | TAX YEAR | 2005 |
| FEDERAL TAX WITHHELD | 16,985.02 | EMPLOYER ID | 043581074 |
| STATE TAX WITHHELD | 4,529.33 | DISTRIBUTION AMOUNT | 56,616.74 |
| NET PAYMENT | 35,102.39 | AFTER TAX EE CONTRIBUTIONS | |
| | | CAPITAL GAINS | |
| | | ORDINARY INCOME | 56,616.74 |
| | | NET APPRECIATION | |
| | | IRS DISTRIBUTION CODE | 1 |
| | | TYPE OF DISTRIBUTION | |
| | | | 56,616.74 |

| REPLACE CHECK # | REPLACE CHECK DATE | REPLACE CHECK AMOUNT |
| --- | --- | --- |
| ADVICE: | | |

THIS INFORMATION IS BEING REPORTED TO THE INTERNAL REVENUE SERVICE



⑆0099 2489 9⑆ ⑈0 110000 28⑈ 9900 18 10⑈

ONE OLD COUNTRY ROAD SUITE 320
CARLE PLACE, NY 11514
TEL (516) 739-5908 • FAX (516) 719-7280
EMAIL JMATTYATLAW@AOL.COM

September 30, 2005

Mr. Anthony Valenti
1529 Stevens Avenue
Merrick, NY 11566

Re:    NY State Installment Agreement

Dear Tony:

Enclosed is the installment agreement with the State for the $5,300.00 balance.

The agreement is to be signed and dated in the right-hand corner of the last pages and returned to Mrs. Lipson in the enclosed envelope with a check for the downpayment of $325.00.

You also have to fill out the page dealing with setting up the automatic pay deductions and attach a voided check to it.  (Note the highlighted areas.)

Please call me if you have any questions.

Very truly yours,

Jeff Morgenstern

Jeff Morgenstern

JM/:LC

Enclosures

New York State Department of
**Taxation and Finance**
TAX COMPLIANCE DIVISION
Nassau Field Office
400 Oak Street Garden City, NY 11530

DATE: September 29, 2005

Anthony Valenti
c/o JEFF MORGENSTERN
ONE OLD COUNTRY RD
CARLE PLACE  NY  11514

Please sign the enclosed copy of the Installment Payment Agreement and
return  in the enclosed envelope **WITHIN 10 DAYS OF RECEIPT.**
Please include your SSN# and corporation title below your signature.
Also,  print your full name.

**Also remit the following:**

1) $325 down payment(please include Tax ID# and IPA ID# on payment)
2) Completed direct debit authorization
3) Voided blank check

Please note: you will receive paper bills via mail until bank account is linked to NYS
computers
 Also, based on income guidelines, can only offer 18 month agreement

**A copy of this installment payment agreement will be sent to you upon approval.**

Mrs. S. Lipson
Tax Compliance Agent
516-542-5338

400 Oak Street
Garden City  NY  11530-6546

**Taxpayer ID:**  P-10-3467223-8

IPA ID: E-420313572-D003-9

# Installment Payment Agreement (IPA)

**Projected IPA
balance due:** $5,378.71

**Number of
payments due:**  17

E-420313572-5
VALENTI-ANTHONY S
1529-STEVENS AVE
MERRICK, NY  11566-2238

**Monthly payment
amount due:** $325.00

**See IPA agreement terms on back.**

If you have questions, please call:(516) 542-5400.

**Below is an itemized list of liabilities included in this agreement:**

| Assessment ID | Tax type | Period ending | Tax due | Penalty & interest | Amount due |
|---|---|---|---|---|---|
| L-023635212-4 | WT | 12/31/01 | $         0.00 | $    2,096.94 | $    2,096.94 |
| L-023635211-5 | WT | 03/31/02 |           0.00 |      1,229.04 |      1,229.04 |
| L-023635210-6 | WT | 06/30/02 |           0.00 |        578.88 |        578.88 |
| L-023635209-6 | WT | 10/02/02 |           0.00 |      1,460.51 |      1,460.51 |

| | | Totals | $         0.00 | $    5,365.37 | $    5,365.37 |
|---|---|---|---|---|---|
| | | Less first downpayment ➤ | | | $      325.00 |
| | | Less second downpayment ➤ | | | $        0.00 |
| | | Plus estimated additional penalty & interest accruing during the life of the IPA ➤ | | | $      338.34 |
| | | Projected IPA balance due (as of  11/15/2005) ➤ | | | $    5,378.71 |

Prepared by  S LIPSON

Approved by  _David G. Edmond_

Title  __Deputy Tax Commissioner__   Date _10/17/2005_

DTF-980.5 (1/05)      SSP0017234 2901954

Tax Compliance Division—CG—ATC
P O Box 5149
Albany NY 12205-5149

**Commissioner of Taxation and Finance**

against

| | Judgment Creditor |
|---|---|

ANTHONY S VALENTI
INDIVIDUALLY AND AS A RESPONSIBLE PERSON OF
JACK WARD, COLOR SERVICE, INC.
1629 STEVENS AVE
MERRICK, NY 11566-2238

Judgment Debtor

Last Known Address

Warrant ID:
E-420313572-W002-3

County of Judgment:
NASSAU

Article of Tax Law:
22/30

The people of the state of New York to:  R CZWAKIEL

an officer or employee of the Department of Taxation and Finance: Whereas, a tax has been found due to the Commissioner of Taxation and Finance of the state of New York imposed by the above noted Article of Tax Law from the debtor named, the nature and amount of which, together with the interest and penalties thereon, are as follows:

| Assessment ID | Period Ending | Tax | Penalty | Interest | Assessment Total |
|---|---|---|---|---|---|
| L-023635212-4 | 12/31/01 | $ 0.00 | $ 27,061.28 | $ 1,616.58 | $ 28,677.86 |
| L-023635211-5 | 03/31/02 | 0.00 | 1,550.68 | 92.63 | 1,643.31 |
| L-023635210-6 | 06/30/02 | 0.00 | 7,470.60 | 446.28 | 7,916.88 |
| L-023635209-6 | 10/02/02 | 0.00 | 1,325.56 | 79.19 | 1,404.75 |

Total amount due ➤ $ 39,642.80

**And whereas,** said tax, interest and penalties now remain wholly unpaid;

**Now therefore, we command you** to file a copy of this warrant within five days after its receipt by you in the office of the clerk of the county named above, for entry by him in the judgment docket, pursuant to the provisions of the Tax Law.

**And we further command you,** that you satisfy said claim of said **Commissioner of Taxation and Finance** for said tax with penalties and interest out of the real and personal property in said county belonging to said debtor and the debts due to him at the time when said copy of this warrant is so docketed in the office of the clerk of such county or at any time thereafter; and that only the property in which said debtor who is not deceased has an interest or the debts owed to him shall be levied upon or sold hereunder; and return this warrant and pay the money collected, to the Commissioner of Taxation and Finance of the state of New York.

**Levy and collect** total amount due shown above plus accrued interest and any additional penalties provided by law.

Current interest rate   8.00 % per year on $39,642.80      from  MAY 27, 2005
The interest rate may vary according to the Tax Law.

Warrant received at 9 o'clock A.M. on

DOCKETED DATE:  6/8/05                Issued

DTF-977 (7/95)      WDP0010647 1751700        By _____        for the Commissioner
                                                     Deputy Tax Commissioner        of Taxation and Finance

ATTORNEY AT LAW
ONE OLD COUNTRY ROAD SUITE 320
CARLE PLACE, NY 11514

TEL (516) 739-5908 • FAX (516) 719-7280
EMAIL JMATTYATLAW@AOL.COM

August 3, 2005

**BY HAND**

NYS Department of Tax and Finance
400 Oak Street, Suite 102
Garden City, New York 11530

     **Re: Anthony Valenti**
       **SS No.: 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**
       **Collection Case ID No.: E-420313572-CL02-7**

Gentlemen:

   I enclose a check payable to the State for $35,000.00, which is to be applied to the above-mentioned warrant.

       Very truly yours,

       /s/ Jeff Morgenstern
       Jeff Morgenstern

Payment Received by
NY State Tax Department:

Dated: 8/3/05

ATTORNEY AT LAW
ONE OLD COUNTRY ROAD SUITE 320
GARDE PLACE, NY 79/24

TEL (516) 739-5908 • FAX (516) 719-7280
EMAIL JMATTYATLAW@AOL.COM

September 30, 2005

Mr. Anthony Valenti
1529 Stevens Avenue
Merrick, NY 11566

Re:     NY State Installment Agreement

Dear Tony:

Enclosed is the installment agreement with the State for the $5,300.00 balance.

The agreement is to be signed and dated in the right-hand corner of the last pages and returned to Mrs. Lipson in the enclosed envelope with a check for the downpayment of $325.00.

You also have to fill out the page dealing with setting up the automatic pay deductions and attach a voided check to it.  (Note the highlighted areas.)

Please call me if you have any questions.

Very truly yours,

Jeff Morgenstern

JM/:LC

Enclosures

Date: 9/29/2005

Taxpayer ID: P-10-3467223-8

IPA ID: E-420313572-D003

# Automatic Payment Deduction Notice

VALENTI-ANTHONY S
1529-STEVENS AVE
MERRICK, NY  11566-2238

Dear Sir or Madam,

If you recently entered into an **Installment Payment Agreement (IPA)** to satisfy an outstanding tax liability, a copy of this agreement, including the terms that outline your specific obligations, is attached.

**Installment Payment Agreements** granted by New York State require that you authorize a direct payment plan allowing the NYS Tax Department to deduct the monthly payment amount directly from your bank account.

—— You choose the date we deduct payments each month, so you know exactly when the bill will be paid. You may choose either the 5th or 15th of each month. This date remains the same during the term of the payment plan.

—— You must complete the enclosed *Authorization Agreement for Automatic Payment Deductions*, and return it within 10 days after you received it.

—— For **joint personal checking or savings account** deductions, all account holders must sign the authorization form, even if only one of the account holders is responsible for the liability.

—— For **business checking or savings account** deductions, all owners, officers, partners, members, or managers having signatory authority for all monies contained in the account must sign the authorization form.

—— For checking accounts, please write the word *VOID* on the face of **a blank check** (not a canceled check or any other media), attach it to the *Authorization Agreement for Automatic Payment Deductions,* and return it in the envelope provided.

—— For savings accounts, please write the word *VOID* on the face of a blank deposit ticket, attach it to the *Authorization Agreement for Automatic Payment Deductions,* and return it in the envelope provided.

—— You must notify us in writing within 10 days if any information you provided on your completed *Authorization Agreement for Automatic Payment Deductions* has been changed or updated. Send correspondence to: Tax Compliance Division, PO Box 5700, Albany NY 12205-0700.

> Please note: We will issue monthly bills until the direct payment option is arranged with your bank, a process that can take 30 to 60 days. Prior to the start of automatic deductions, we will advise you when the deductions will begin.

If you have any questions, please call toll free 1 800 835-3554. From areas outside the U.S. and outside Canada, call (518) 485-6800.

TC-180 (6/04)

400 Oak Street
Garden City NY 11530-6546

IPA ID: E-420313572-D003-

## Proposed Terms for
## Installment Payment Agreement (IPA)

Projected IPA
balance due: $5,338.29

Number of
payments due: 17

E-420313572-5
VALENTI-ANTHONY S
1529-STEVENS AVE
MERRICK, NY 11566-2238

Monthly payment
amount due: $325.00

**See IPA agreement terms on back.**

If you have questions, please call: (516) 542-5400.

Below is an itemized list of liabilities included in this agreement:

| Assessment ID | Tax type | Period ending | Tax due | Penalty & interest | Amount due |
|---|---|---|---|---|---|
| L-023635212-4 | WT | 12/31/01 | $    0.00 | $    2,096.94 | $    2,096.94 |
| L-023635211-5 | WT | 03/31/02 |      0.00 |      1,229.04 |      1,229.04 |
| L-023635210-6 | WT | 06/30/02 |      0.00 |        578.88 |        578.88 |
| L-023635209-6 | WT | 10/02/02 |      0.00 |      1,460.51 |      1,460.51 |

| | | | | | |
|---|---|---|---|---|---|
| Totals | | | $    0.00 | $    5,365.37 | $    5,365.37 |
| Less first downpayment ➤ | | | | | $    325.00 |
| Less second downpayment ➤ | | | | | $    0.00 |
| Plus estimated additional penalty & interest accruing during the life of the IPA ➤ | | | | | $    297.92 |
| Projected IPA balance due (as of 11/15/2005) ➤ | | | | | $    5,338.29 |

*For department use only*

Prepared by  S LIPSON

Approved by _____

Title _____ Date _____

*For taxpayer use only*

I have read both sides of this agreement and understand and agree to all provisions.

✓ Signature _____

Date _____

DTF-980 (1/05)

(Read carefully before signing this agreement.)

You have stated you are unable to pay your New York State taxes in full based on your current financial condition, and you have requested an installment agreement. You must comply with the following:

1. Current returns must be filed and paid on a timely basis.

2. All other liabilities not included in this agreement and any new liabilities incurred must be paid on demand.

3. You must make regular, timely payments. Any state/federal tax refunds due you will be applied to your outstanding liabilities and not returned to you. You must continue to submit scheduled payments as billed. The application of refunds to your liability lowers your balance due, which can shorten the life of your agreement or lower the amount of your final payment.

If you fail to meet any of the above conditions, or if it is determined that collection of this liability is in jeopardy, we will withdraw the privilege of installment payments. Also, if not already filed, we can file a tax warrant against you; and the entire amount of your tax liability can be collected by any or all of the following methods:

- **Garnishee of wages**

- **Levy and seizure of assets**

- **Issuance of bills and enforcement of collection actions against responsible individuals of a business entity**

- **Other appropriate enforcement action**

You will receive an *Installment Payment Agreement (IPA) Billing Notice* on a monthly basis. The payment due date will be indicated on each notice. Send your payment with the lower portion of the IPA billing notice in the envelope provided. Please note: If you are approved for automatic payment deductions, you will no longer receive monthly bills. The process takes about 30-60 days; and, you will be advised prior to the start of the automatic payment deductions.

**If you do not receive your** *Installment Payment Agreement Billing Notice* by five days prior to your established monthly payment due date, submit your payment by the due date to the address noted below. Write your IPA ID on the remittance to ensure your account is properly credited. Your IPA ID can be found on the front of this document.

NYS ASSESSMENT RECEIVABLES
PO BOX 4128
BINGHAMTON NY 13902-4128

This agreement is based upon your current financial condition and is subject to revision or cancellation if subsequent financial statements received by the Tax Compliance Division reflect a change in your ability to pay.

Your actual liability may be more or less than the total projected IPA amount due shown on the other side since penalty and interest are computed on a daily basis. It is to your advantage to make payments early and/or to accelerate payments.

Please be sure that:

- You sign the appropriate section on the front.

- You attach your financial statement, if not submitted previously.

- You insert this form properly in the envelope provided if returning by mail.

Make sure this address
shows through envelope window.

NYS TAX DEPARTMENT
Tax Compliance Division - Nassau DO
400 Oak Street
Garden City NY 11530-6546

DTF-980 (1/05) (back)

# Authorization Agreement for Automatic Payment Deductions

P O Box 5700
Albany, NY 12205-0700

VALENTI-ANTHONY S
1529-STEVENS AVE
MERRICK, NY 11566-2238

**IPA ID:**

E-420313572-D003-9

**Day phone number:**

( _____ ) _____ - _____

**Night phone number:**

( _____ ) _____ - _____

Please select **one** date:  5th ☐  15th ☐    Deductions are allowed on the 5th **or** 15th of the month **only.**

**Checking accounts**
require a voided blank check

Attach
voided
document
here

**Savings accounts**
require a voided blank deposit slip

```
                                              1234
                              DATE_____
PAY TO THE
ORDER OF
                                        DOLLARS
First State Bank

I: 250250025 I: 2020202020202 II• 1234
```

VOID

Please write *VOID* across the face of a blank check or deposit slip and attach it to this form before returning it to us.

Name: _____
(Your name exactly as it appears on the bank account that you are using)

Bank name: _____    Indicate account type:  Checking ☐    Savings ☐

Routing transit/ABA number: |__|__|__|__|__|__|__|    Account number: |__|__|__|__|__|__|__|__|__|__|__|

If the account is in the name of more than one individual, please provide the name and signature of each individual listed on the account.

I (we) hereby authorize the New York State Department of Taxation and Finance to initiate debit entries to the bank account indicated above and the bank named above to debit the same to such account for the amount of the monthly installment payment. This authority is to remain in full force and effect until the Tax Department and the bank have received written notification from me (or any of us) of its termination in such time and in such manner as to afford a reasonable opportunity to act on it.

Print name: _____    Signature: _____

Title: _____    Date: _____

Print name: _____    Signature: _____

Title: _____    Date: _____

TC-181.1 (11/03)                    (Continued on back)

Postage
Required
Post Office will
not deliver
without proper
postage.

NYS DEPARTMENT OF TAXATION & FINANCE
TAX COMPLIANCE DIVISION
400 OAK ST STE 102
GARDEN CITY NY 11530-6546

DO-870.28 NA (11/04)

L. Plon

NYS Assessment Receivables
PO Box 4127
Binghamton NY 13902-4127

Date: 11/21/2005

IPA ID: E-420313572-D003-9

**Monthly payment
amount:** $325.00

E-420313572-5
VALENTI-ANTHONY S
1529-STEVENS AVE
MERRICK, NY  11566-2238

## Notice of Approval of Automatic Payment Deductions on
## Installment Payment Agreement (IPA)

Dear Sir or Madam,

We have received your *Authorization Agreement for Automatic Payment Deductions.* The agreement allows us to automatically deduct payment from your account number 7917173960              with COMMERCE BANK. The automatic withdrawal is scheduled to begin with the payment of **$325.00** due on **12/15/2005.**

Please keep this notice for your records, as we will not mail future billing notices. You may make additional payments to accelerate repayment of the liability and reduce the interest accruals. Please include your IPA ID number on your remittance and mail your payment(s) to:

**NYS ASSESSMENT RECEIVABLES
PO BOX 4127
BINGHAMTON NY 13902-4127**

If you have any questions, please contact us at 1 800 835-3554. From areas outside the U.S. and outside Canada, call (518) 485-6800.

TC-182 (5/05)      MNP0002258 3251939

Exhibit A 3

**CHASE**

CUSTOMER COPY

DEBIT TICKET

REQUEST FOR OFFICIAL CHECK

DATE _____

| | DOLLARS | CENTS |
|---|---|---|
| DOLLAR AMOUNT | $ | |

**FOR BANK USE ONLY**

| | | |
|---|---|---|
| FEE AMOUNT (IF APPLICABLE) | $ | |
| TOTAL DEBIT AMOUNT | $ | |
| OFFICIAL CHECK NUMBER | | |

☐ Checking/MMA    ☐ Regular/Passbook Savings
☐ High Yield Savings

Amount _____
(PRINT THE AMOUNT IN WORDS HERE)

TO: PAYEE'S NAME (PRINT CLEARLY)

PAYEE'S ADDRESS (No. & Street)    CITY    STATE    ZIP CODE

I authorize JPMorgan Chase Bank to debit my account and issue an
Official Check as described above.

CUSTOMER'S NAME (PRINT)    CUSTOMER'S ACCOUNT NUMBER

CUSTOMER SIGNATURE

02 3702 (11-01)

**Exhibit B**

Check Register
For the Period From Jan 1, 2002 to Oct 31, 2005
Filter Criteria includes Report order is by Date

Case 4:08-cr-00145-THK    Document 5-5    Filed 05/27/2008    Page 2 of 23

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| WTHDRL J.V. | 2/4/04 | JOSEPH VALENTI | 103000 | 601.50 |
| ANN V TRANSFE | 2/4/04 | AMERICAN EXPRESS | 103500 | 5,000.00 |
| ANN V TRANSFE | 2/4/04 | AMERICAN EXPRESS | 103000 | 5,000.00 |
| WTHDRL J.V. | 2/4/04 | JOSEPH VALENTI | 103000 | 501.50 |
| 10028 | 2/5/04 | THE CHASE MANHATT | 103000 | 500.00 |
| 10029 | 2/5/04 | LOUIS V. PERROTTA & | 103000 | 500.00 |
| 10030 | 2/5/04 | LOUIS V. PERROTTA & | 103000 | 500.00 |
| 10031 | 2/5/04 | LOUIS V. PERROTTA & | 103000 | 500.00 |
| 10032 | 2/5/04 | SPRINT | 103000 | 62.35 |
| 10033 | 2/5/04 | UNITED PARCEL SERV | 103000 | 190.84 |
| 10034 | 2/5/04 | CAPITAL ONE AUTO FI | 103000 | 1,352.36 |
| 10035 | 2/5/04 | ROBIN STROLL | 103000 | 510.00 |
| 10036 | 2/6/04 | LINDENMEYR MUNRO | 103000 | 2,011.20 |
| 10037 | 2/6/04 | GLYN FORD | 103000 | 287.97 |
| WTHDRL 2/09/04 | 2/9/04 | JOSEPH VALENTI | 103000 | 373.23 |
| 10038 | 2/10/04 | LOUIS V. PERROTTA & | 103000 | 500.00 |
| 10039 | 2/10/04 | LOUIS V. PERROTTA & | 103000 | 500.00 |
| 10040 | 2/10/04 | CLYDE LEGALL JR | 103000 | 60.00 |
| 10041 | 2/10/04 | EQUITY BANK | 103000 | 437.71 — LOU'S CREDIT CARD |
| 10042 | 2/10/04 | GUARDIAN INS & ANN | 103000 | 267.11 |
| 10044 | 2/10/04 | PITNEYWORKS | 103000 | 575.00 |
| 10043 | 2/10/04 | RABBIT MESSEGER, IN | 103000 | 500.00 |
| 10045 | 2/10/04 | ALLSTATE | 103000 | 514.88 |
| 10046 | 2/10/04 | JOSEPH VALENTI | 103000 | 550.00 |
| 6728 | 2/11/04 | DIVERSIFIED DISPLAY | 103500 | 404.00 |
| 10047 | 2/11/04 | CASH | 103000 | 347.50 |
| WTHDRL 2/10/04 J | 2/12/04 | JOSEPH VALENTI | 103000 | 864.45 |
| CNF#V9357010 | 2/12/04 | AMERICAN EXPRESS | 103500 | 500.00 |
| 10048 | 2/12/04 | AMERICAN EXPRESS | 103000 | 488.55 |
| 10049 | 2/13/04 | LTI NEW YORK | 103000 | 540.00 |
| 10050 | 2/13/04 | ROBERT FARDELLA | 103000 | 500.00 — LOU'S ATTORNEY |
| 6818 | 2/13/04 | AVAYA FINANCIAL SE | 103500 | 515.18 |
| 10051 | 2/13/04 | QUALITY MTNG &LAM | 103000 | 1,394.60 |
| 6737 | 2/16/04 | DIVERSIFIED DISPLAY | 103500 | 555.00 |

Check Register
For the Period From Jan 1, 2002 to Oct 31, 2005
Filter Criteria Cases 1:08-cr-00145-THK   Document 5-5   Filed 05/27/2008   Page 3 of 23

| Check # | Date | Payee | Cash Account | Amount |
|---|---|---|---|---|
| 10052 | 2/17/04 | LOUIS V. PERROTTA & | 103000 | 500.00 |
| CNF#S4819DEDC | 2/17/04 | LOUIS V. PERROTTA & | 103000 | 244.85 |
| 10053 | 2/17/04 | EQUIPMENT SOURCE, | 103000 | 500.00 |
| WTHDRL J V. | 2/17/04 | JOSEPH VALENTI | 103000 | 403.00 |
| 10054 | 2/18/04 | CASH | 103000 | 328.00 |
| WTHDRL J V 2/18- | 2/19/04 | JOSEPH VALENTI | 103000 | 721.50 |
| 10056 | 2/19/04 | 23RD ST. MANAGEME | 103000 | 9,208.98 |
| 10057 | 2/19/04 | KINGERY PRINTING C | 103000 | 1,000.00 |
| 6820 | 2/19/04 | JOHNSON, MORGAN& | 103500 | 500.00 |
| 6819 | 2/20/04 | QUALITY INDEXING C | 103500 | 175.00 |
| 6820V | 2/20/04 | JOHNSON, MORGAN& | 103500 | -500.00 |
| 10057V | 2/20/04 | KINGERY PRINTING C | 103000 | -1,000.00 |
| 10058 | 2/20/04 | GE CAPITAL | 103000 | 1,848.90 |
| 6821 | 2/20/04 | EMPIRE HEALTHCHOI | 103500 | 405.78 |
| 6822 | 2/23/04 | JACK WARD COLOR S | 103500 | 500.00 |
| CNF#397500592 | 2/23/04 | FEDERAL EXPRESS CO | 103000 | 562.95 |
| 10059 | 2/24/04 | LINDENMEYR MUNRO | 103000 | 1,052.00 |
| 10060 | 2/24/04 | LINDENMEYR MUNRO | 103000 | 410.00 |
| 10062 | 2/24/04 | JEANETTE SIERRA | 103000 | 300.00 |
| 10061 | 2/24/04 | J.W.DIGITAL | 103000 | 1,000.00 |
| WTHDRLJ V | 2/25/04 | JOSEPH VALENTI | 103000 | 923.00 |
| 10063 | 2/26/04 | JACK WARD COLOR S | 103000 | 3,000.00 |
| 6824 | 2/26/04 | JACK WARD COLOR S | 103500 | 3,000.00 |
| 10064 | 2/26/04 | EMPIRE HEALTHCHOI | 103000 | 6,083.60 |
| WTHDRL J V | 2/27/04 | JOSEPH VALENTI | 103000 | 101.50 |
| EXCHANGES | 2/29/04 | INC 3, INCORPORATED | 128000 | 27,055.00 |
| ADJCR | 2/29/04 | JOHNSON, MORGAN& | 103000 | |
| ADJCR | 2/29/04 | LTI NEW YORK | 103000 | |
| WTHDRL J V. | 3/1/04 | JOSEPH VALENTI | 103000 | 139.00 |
| 10065 | 3/2/04 | OCE-USA, INC | 103000 | 783.96 |
| 10066 | 3/2/04 | NORVERGENCE | 103000 | 165.92 |
| 10067 | 3/2/04 | RABBIT MESSEGER, IN | 103000 | 500.00 |
| 10071 | 3/2/04 | VALENTINE PACKAGI | 103000 | 810.26 |
| 10072 | 3/2/04 | CORPORATE COFFEE S | 103000 | 531.86 |
| WTHDRL J V | 3/2/04 | JOSEPH VALENTI | 103000 | 701.50 |

Check Register
For the Period From Jan 1, 2002 to Oct 31, 2005
Filter Criteria Case 1:08-cr-00145-THK    Document 5-5    Filed 05/27/2008    Page 4 of 23

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| 10068 | 3/3/04 | THE CHASE MANHATT | 103000 | 500.00 |
| 10069 | 3/3/04 | LOUIS V. PERROTTA & | 103000 | 500.00 |
| 10070 | 3/3/04 | ARGO ENVELOPE COR | 103000 | 40.55 |
| 10073 | 3/3/04 | J.W DIGITAL | 103000 | 5,000.00 ✓ |
| 6825 | 3/3/04 | CASH | 103500 | 348.98 |
| 10074 | 3/4/04 | LINDENMEYR MUNRO | 103000 | 956.00 |
| 10075 | 3/4/04 | JACK WARD COLOR S | 103000 | 3,000.00 ✓ |
| 10076 | 3/4/04 | J.W DIGITAL | 103000 | 2,000.00 ✓ |
| ANN PMNT | 3/5/04 | AMERICAN EXPRESS | 103000 | 500.00 |
| 10077 | 3/8/04 | J W DIGITAL | 103000 | 9,000.00 ✓ |
| WTHDR J.V. | 3/8/04 | JOSEPH VALENTI | 103000 | 176.33 |
| ELCTR PMNT | 3/9/04 | AVAYA FINANCIAL SE | 103500 | 520.18 |
| 6826 | 3/9/04 | EQUITY BANK | 103500 | 437.71 |
| 6827 | 3/9/04 | VERIZON | 103500 | 735.37 |
| 6828 | 3/9/04 | VERIZON | 103500 | 63.63 |
| 6830 | 3/9/04 | JOSEPH VALENTI | 103500 | 262.18 |
| 6831 | 3/9/04 | ROBIN STROLL | 103500 | 94.50 |
| 10080 | 3/10/04 | J.W DIGITAL | 103000 | 3,000.00 ✓ |
| AX-L.P. ELEC PM | 3/10/04 | LOUIS V. PERROTTA & | 103000 | 1,205.59 |
| WTHDRL J.V. | 3/10/04 | JOSEPH VALENTI | 103000 | 681.50 |
| 10081 | 3/11/04 | LINDENMEYR MUNRO | 103000 | 1,107.50 |
| 10082 | 3/11/04 | RABBIT MESSEGER, IN | 103000 | 919.03 |
| 10083 | 3/12/04 | J W DIGITAL | 103000 | 5,000.00 ✓ |
| 10084 | 3/15/04 | J W DIGITAL | 103000 | 3,000.00 ✓ |
| WTHDR J.V. | 3/15/04 | JOSEPH VALENTI | 103000 | 118.19 |
| 10085 | 3/16/04 | J W DIGITAL | 103000 | 25,000.00 ✓ |
| 10086 | 3/16/04 | CASH | 103000 | 650.00 |
| 10087 | 3/16/04 | THE CHASE MANHATT | 103000 | 500.00 |
| 10088 | 3/16/04 | AT&T WIRELESS SERV | 103000 | 200.00 |
| 10089 | 3/16/04 | GE CAPITAL | 103000 | 1,848.90 |
| 10090 | 3/16/04 | MOCC | 103000 | 213.50 |
| 10092 | 3/16/04 | RABBIT MESSEGER, IN | 103000 | 500.00 |
| 10093 | 3/16/04 | US TREASURY | 103000 | 15,000.00 ✓ |
| 10094 | 3/16/04 | KORN & SPIRN | 103000 | 1,200.00 |

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| CNF#694151353 | 3/16/04 | FEDERAL EXPRESS CO | 103000 | 1,373.47 |
| 10095 | 3/16/04 | JEANETTE SIERRA | 103000 | 300.00 |
| 10096 | 3/17/04 | JOHN'S PRINTING COR | 103000 | 400.00 |
| WTHDRL J V | 3/17/04 | JOSEPH VALENTI | 103000 | 100.00 |
| 10097 | 3/18/04 | CRAIG SEYFFER | 103000 | 221.73 |
| 10098 | 3/18/04 | SPIRAL BINDING CO ,I | 103000 | 1,293.85 |
| 10099 | 3/19/04 | JACK WARD COLOR S | 103000 | 100.00 |
| 10100 | 3/19/04 | US TREASURY | 103000 | 5,000.00 |
| 10002 | 3/22/04 | DIVERSIFIED DISPLAY | 103000 | 426.00 |
| 10102 | 3/23/04 | J W DIGITAL | 103000 | 1,489.20 |
| 10103 | 3/23/04 | EQUIPMENT SOURCE, | 103000 | 1,000.00 |
| 10104 | 3/23/04 | ACME EXTERMINATO | 103000 | 108.63 |
| 10105 | 3/23/04 | NYC FIRE DEPT. | 103000 | 105.00 |
| 10106 | 3/23/04 | CORPORATE COFFEE S | 103000 | 259.61 |
| 10107 | 3/23/04 | IESI NY CORPORATIO | 103000 | 434.50 |
| 10108 | 3/23/04 | HEWLETT-PACKARD F | 103000 | 173.28 |
| 10110 | 3/23/04 | VOID | 103000 | |
| 10109 | 3/23/04 | LTI NEW YORK | 103000 | 1,102.32 |
| 10111 | 3/23/04 | MIKE WILSON PHOTO | 103000 | 200.00 |
| 10112 | 3/23/04 | STAPLES CREDIT PLA | 103000 | 372.40 |
| 10113 | 3/23/04 | DELL | 103000 | 233.97 |
| 10101 | 3/24/04 | GE CAPITAL | 103000 | 1,848.90 |
| WTHDRL J V. | 3/24/04 | JOSEPH VALENTI | 103000 | 200.00 |
| 6793 | 3/26/04 | DIVERSIFIED DISPLAY | 103500 | 904.00 |
| 10115 | 3/26/04 | J W DIGITAL | 103000 | 1,243.61 |
| 10078 | 3/29/04 | JOHNSON, MORGAN& | 103000 | 1,000.00 |
| 10116 | 3/29/04 | EMPIRE HEALTHCHOI | 103000 | 5,464.82 |
| 10117 | 3/29/04 | EMPIRE HEALTHCHOI | 103000 | 405.78 |
| WTHDRL J V | 3/29/04 | JOSEPH VALENTI | 103000 | 101.50 |
| 10118 | 3/30/04 | J W DIGITAL | 103000 | 1,562.43 |
| 10119 | 3/30/04 | J W DIGITAL | 103000 | 20,000.00 |
| 10120 | 3/30/04 | BRIDGECOM INTERNA | 103000 | 719.20 |
| 10121 | 3/30/04 | SUPPORT ENFORCMN | 103000 | 475.00 |
| 10122 | 3/30/04 | NYC SUPPORT COLLE | 103000 | 750.00 |
| 10123 | 3/30/04 | RABBIT MESSEGER, IN | 103000 | 797.25 |

| Check # | Date | Payee | Cash Account | Amount |
|---|---|---|---|---|
| WTHDRL J.V. | 3/30/04 | JOSEPH VALENTI | 103000 | 581.50 |
| 10114 | 3/30/04 | LINDENMEYR MUNRO | 103000 | 2,851.00 |
| 10091 | 3/31/04 | LINDENMEYR MUNRO | 103000 | 2,058.00 |
| 10124 | 4/5/04 | RABBIT MESSEGER, IN | 103000 | 900.00 |
| 10125 | 4/7/04 | J W DIGITAL | 103000 | 3,000.00 |
| 10126 | 4/8/04 | AVAYA FINANCIAL SE | 103000 | 605.62 |
| WTHDRL J.V. | 4/12/04 | JOSEPH VALENTI | 103000 | 439.48 |
| 10127 | 4/13/04 | J W DIGITAL | 103000 | 1,008.00 |
| 10128 | 4/13/04 | J W DIGITAL | 103000 | 827.55 |
| WTHDRWL J.V. | 4/13/04 | JOSEPH VALENTI | 103000 | 33.83 |
| 10129 | 4/14/04 | RABBIT MESSEGER, IN | 103000 | 551.50 |
| 10130 | 4/15/04 | IESI NY CORPORATIO | 103000 | 434.50 |
| 10131 | 4/15/04 | CORPORATE COFFEE S | 103000 | 266.12 |
| 10132 | 4/15/04 | GE CAPITAL | 103000 | 1,913.90 |
| 10133 | 4/15/04 | SPIRAL BINDING CO J | 103000 | 620.86 |
| 10134 | 4/15/04 | J W DIGITAL | 103000 | 133.61 |
| 10135 | 4/16/04 | LINDENMEYR MUNRO | 103000 | 3,022.75 |
| 10055 | 4/19/04 | DIVERSIFIED DISPLAY | 103000 | 1,355.00 |
| ANN PMNT | 4/19/04 | AMERICAN EXPRESS | 103000 | 1,000.00 |
| 10136 | 4/20/04 | QUALITY MNTG &LAM | 103000 | 638.46 |
| 10137 | 4/20/04 | QUALITY INDEXING C | 103000 | 376.00 |
| 10139 | 4/20/04 | VOID | 103000 | |
| 10140 | 4/20/04 | VOID | 103000 | |
| 10141 | 4/20/04 | VOID | 103000 | |
| 10138 | 4/20/04 | LTI NEW YORK | 103000 | 325.60 |
| 10142 | 4/20/04 | NORVERGENCE | 103000 | 331.84 |
| 10143 | 4/20/04 | VALENTINE PACKAGI | 103000 | 774.56 |
| 10144 | 4/20/04 | STAPLES CREDIT PLA | 103000 | 305.14 |
| 10146 | 4/21/04 | VOID | 103000 | |
| 10147 | 4/21/04 | VOID | 103000 | |
| 10148 | 4/21/04 | VOID | 103000 | |
| 10145 | 4/21/04 | LTI NEW YORK | 103000 | 874.40 |
| WTHDR IV | 4/21/04 | JOSEPH VALENTI | 103000 | 20.02 |
| WTHDRL JV | 4/26/04 | JOSEPH VALENTI | 103000 | 20.00 |

Filter Criteria includes: Report order by D...

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| 10149 | 4/27/04 | THE CHASE MANHATT | 103000 | 500.00 |
| 10150 | 4/27/04 | THE U.S. LIFE INS. CO. | 103000 | 356.69 |
| 10151 | 4/27/04 | RABBIT MESSEGER, IN | 103000 | 1,020.00 |
| 10152 | 4/29/04 | 23RD ST. MANAGEME | 103000 | 5,000.00 |
| 10154 | 4/29/04 | SPIRAL BINDING CO ,I | 103000 | 1,072.36 |
| WTHDRL J.V. | 4/29/04 | JOSEPH VALENTI | 103000 | 20.00 |
| ANN PMNT | 4/29/04 | AMERICAN EXPRESS | 103000 | 1,000.00 |
| 10155 | 4/30/04 | US TREASURY | 103000 | 5,000.00 ✓ |
| WTHDRL J.V. | 5/3/04 | JOSEPH VALENTI | 103000 | 501.50 |
| 10156 | 5/4/04 | THE CHASE MANHATT | 103000 | 500.00 |
| 10157 | 5/5/04 | LINDENMEYR MUNRO | 103000 | 3,931.50 |
| 10159 | 5/6/04 | RABBIT MESSEGER, IN | 103000 | 500.00 |
| 10153 | 5/7/04 | 23RD ST. MANAGEME | 103000 | 5,000.00 |
| 10158 | 5/12/04 | LINDENMEYR MUNRO | 103000 | 3,940.80 |
| 10160 | 5/12/04 | INTEGRITY | 103000 | 2,000.00 |
| 10161 | 5/17/04 | RABBIT MESSEGER, IN | 103000 | 500.00 |
| 10162 | 5/18/04 | IESI NY CORPORATIO | 103000 | 434.50 |
| 10163 | 5/18/04 | LINDENMEYR MUNRO | 103000 | 2,945.68 |
| 10164 | 5/19/04 | QUALITY MTNG.&LAM | 103000 | 500.00 |
| 10165 | 5/24/04 | LOG-ON | 103000 | 500.00 |
| 10166 | 5/25/04 | INTEGRITY | 103000 | 2,000.00 |
| 10167 | 5/25/04 | ACME EXTERMINATO | 103000 | 108.63 |
| 10168 | 5/25/04 | LOG-ON | 103000 | 505.79 |
| 10169 | 5/25/04 | METROPOLITAN FLAG | 103000 | 150.00 |
| 10170 | 5/25/04 | QUALITY INDEXING C | 103000 | 251.00 |
| 10171 | 5/25/04 | RABBIT MESSEGER, IN | 103000 | 680.50 |
| ANN PMNT | 5/27/04 | AMERICAN EXPRESS | 103000 | 2,500.00 |
| 10172 | 5/31/04 | LINDENMEYR MUNRO | 103000 | 2,459.50 |
| 10173 | 6/10/04 | SPIRAL BINDING CO ,I | 103000 | 914.12 |
| 10160V | 6/15/04 | INTEGRITY | 103000 | -2,000.00 |
| 10166V | 6/15/04 | INTEGRITY | 103000 | -2,000.00 |
| 10174 | 6/16/04 | INTEGRITY | 103000 | 4,000.00 |
| ANN PMNT | 6/24/04 | AMERICAN EXPRESS | 103000 | 1,000.00 |
| WTHDRL J.V. | 6/25/04 | JOSEPH VALENTI | 103000 | 10.04 |
| WTHDRL J.V. | 7/1/04 | JOSEPH VALENTI | 103000 | 20.10 |

Filter Criteria includes: Report order is by Date.

| Check # | Date | Payee | Cash Account | Amount |
|---------|------|-------|--------------|--------|
| ANN PMNT | 7/22/04 | AMERICAN EXPRESS | 103000 | 1,000.00 |
| WTHDRWL J.V. | 7/29/04 | JOSEPH VALENTI | 103000 | 41.01 |
| WTHDRWL J.V. | 8/5/04 | JOSEPH VALENTI | 103000 | 585.76 |
| WHTDRL J.V. | 8/7/04 | JOSEPH VALENTI | 103000 | 41.50 |
| ANN PMNT | 8/12/04 | AMERICAN EXPRESS | 103000 | 1,000.00 |
| WTHDRL J.V. | 8/12/04 | JOSEPH VALENTI | 103000 | 20.00 |
| WTHDRL J.V. | 8/13/04 | JOSEPH VALENTI | 103000 | 21.50 |
| WTHDRL J.V. | 8/20/04 | JOSEPH VALENTI | 103000 | 61.50 |
| WTHDRL J.V. | 8/23/04 | JOSEPH VALENTI | 103000 | 37.50 |
| Total | | | | 4,116,631.88 |

**Exhibit C**

1965 MERRICK ROAD
MERRICK NEW YORK 11566
———
(516) 379-4414

November 4, 2007

To Whom It May Concern:

Anthony Valenti (DOB 3/31/54) entered into treatment with me on February 17, 2004. Presenting problems included symptoms of depression and anxiety secondary to significant business reversals and concomitant financial difficulties. At that time, he was beset by frequent panic attacks, he no longer felt capable of attending to his business and there was a strong sense of despair. In addition, he was anhedonic, guilt-ridden and becoming increasingly isolated socially.

Mr. Valenti responded well to an intervention of cognitive behavioral therapy and medication (Lexapro, 10 mg. daily prescribed by his primary care physician, Dr. Steven Golub). He ceased taking the psychotropic medication in September of '04, but continued with me in treatment. He responded well to the cognitive-behavioral intervention and over time the frequency of sessions was reduced from weekly to once a month. Since April of '06 he has been seen only intermittently. The symptoms of depression and subjective anxiety are much reduced, Mr. Valenti's mood is increasingly euthymic and functioning in critical areas is good to excellent.

Should you have any questions and or wish to discuss the above in more detail, please feel free to call me at (516) 379-4414.

Sincerely,

Richard J. Altshuler, Ph.D.

# SPECIALISTS

Gregory Strachovsky, MD, FACC
(1949-2001)

Philip D. Ragno, MD, FACC

Jeffrey M. Zola, MD, FACC

Anthony T. Gambino, MD, FACC

Mitchell S. Lefland, MD, FACC

Richard K. Schwartz, DO, FACC

Richard B. Jacaruso, DO, FACC, FASNC

Jeffrey S. Snow, MD, FACC, FCCP, FACP

Nicolas Raro, MD

Ingrid L. Bloomfield, MSN, APRN, BC

Anne M. Gabriel, RPAC

Anthony Teska, Exec. Dir.

November 14, 2007

RE: Anthony Valenti
DOB: 3/31/54

To Whom It May Concern:

Anthony Valenti is a patient under my care for cardiovascular disease. He has a history of hyperlipidemia, hypertension, and atherosclerotic coronary disease status post multiple stent placements to the left anterior descending artery in December of 2004 as well as the right coronary artery in December of 2004. He is also status post stent placement to the right coronary artery and circumflex arteries in July of 2005.

Mr. Valenti is followed on a regular basis for his coronary artery disease and most recently has been evaluated for exertional angina. While Mr. Valenti is stable from a cardiovascular viewpoint, his condition should be considered overall to be guarded and stable. If you require further information regarding Mr. Valenti's care; please do not hesitate to contact my office after obtaining appropriate permission for release of information.

Sincerely,

Mitchell S. Lefland, MD, FACC
MSL/eb

80 East Jericho Turnpike
Mineola, New York 11501
Tel   (516) 877-2626
Fax  (516) 877-0945

**Exhibit D**

JEFF H. MORGENSTERN, PLLC
ONE OLD COUNTRY ROAD SUITE 320
CARLE PLACE, NY 11514
—
TEL (516) 739-5908 • FAX (516) 719-7280
EMAIL JMATTYATLAW@AOL.COM

November 26, 2007

To Whom it May Concern:

RE:  <u>Anthony Valenti</u>

    I have known Anthony Valenti for about three and one half years.  During that time period, our relationship primarily consisted of my representing him in his personal bankruptcy case.  I can honestly say that in all of my 22 years of practicing law, I have had very few clients, if any, that have been more of a pleasure to deal with than Mr. Valenti.  I have found him to be a fine, upstanding, responsible individual, and good family man who suffered a series of misfortunes in his business and personal life, some of which was beyond his control.

    In a relatively short period of time, Mr. Valenti had to endure the loss of his investment, and source of income from his printing business (on the heels of the 9/11 attacks), coupled with the stress of various health problems which affected his ability to resume employment elsewhere.  Throughout that difficult time, which culminated in the bankruptcy filing, Mr. Valenti always cooperated with the Court in the administration of his case.

    He emerged from bankruptcy, left with no assets having any material equity, and still owing substantial payroll tax liabilities to the I.R.S. and New York State.  Since the bankruptcy ended in 2005, he has fully satisfied the New York State liability, and has made good faith efforts to attempt to resolve the I.R.S. liability, which is still outstanding.

    I firmly believe that he should be given every opportunity to restore his life to some sort of normalcy.

    If you require any further information, please feel free to contact me.

Very truly yours,

Jeff Morgenstern

JM:LC

November 18, 2007

To Whom It May Concern;

We have known Anthony Valenti for about 30 years. We first became friends with Tony when we were both dating. We were married seven months after the Valenti's so we spent a lot of time together as Newlyweds. Over the years Tony became more than just a friend. He became family. He is a wonderful person who is very much a part of our family's life. Tony is always willing to lend a hand. When we moved to Merrick, Tony was there to help us move in. He is not afraid to get his hands dirty and helped us rip up carpets and move boxes – all to help make our house a home. We have enjoyed many vacations with Tony, whether it be skiing, swimming or sightseeing. We even survived a hurricane in Barbardos, spending the night together in one room. When our dog could no longer walk he went to the vet with us to have her put down. We cried together on the way home as he had done the same to a beloved dog he grew up with a short time before.

We are a Catholic family and Godparents are very important to us. We pick them very carefully giving much thought to it. We chose Tony to christen our daughter. He always makes her feel special and we know that he loves her as much as she loves him. He is a good role model and each of our children looks up to him for guidance and a loving hand.

Recently our mother/mother in law passed away. He always knew how to make her feel special. He would always tease her about her rice pudding which made her feel very special. He was there for our family during this difficult time.

In our eyes Tony is a wonderful, kind, loving husband and father and a good friend. He has raised a wonderful, intelligent and respectable daughter that we know he is very proud of. We know that we could call him at any time and he would come running. He is just that kind of person.

Sincerely,

*Paul Guaneri*

*Susan Guaneri*

Paul and Susan Guaneri

1650 Thorne Court

Merrick, NY 11566

**CHRISTINE A. STROMBERG**
**7 SPERRY STREET EAST**
**EAST ROCKAWAY, NEW YORK 11518**
**516 599 7079**

November 19, 2007

Re: Anthony Valenti

To whom it may concern,

I have been a good friend of Anthony Valenti and his family for about twenty years. He has always proven himself to be a trustworthy loyal friend. We have been thru a lot of good times as well as bad. I can always count on him to helped me with my volunteer work for the Interfaith Nutrition Network. Thru the years we have served Thanksgiving dinner at their soup kitchen as well as collecting presents and clothing for the homeless. In my opinion he is a fine upstanding citizen who would never hurt anyone intentionally.

I am aware of his business failure and of his emotional issues that followed. I am also aware that some of his responsibilities were not taken care of properly. I believe he was not aware of these responsibilities at that time and did try to do his best to do everything right.

Respectfully yours,

Christine Stromberg
Accountant

7 Sperry Street East
East Rockaway, NY 11518

November 16, 2007

Re: Anthony Valenti

To Whom It May Concern:

I have known Anthony Valenti, his wife Annie, and their daughter Alexandra for over 20 years, and consider him to be one of my closest friends. I know him so well that I would go so far as to call Tony 'my brother'. He has been there for me to not only provide camaraderie and friendship, but also strength and support whenever I or my family or friends needed it.

By profession I am a Senior Vice President of JPMorgan Chase. In that capacity for over 30 years I am trained to analyze not only the financial ability, but even more importantly the character of my customers and prospects. Character is a reflection of someone's intentions to live up to their obligations, separate from their financial abilities to do so.

In both my personal and my professional opinion, I would consider Anthony Valenti to be of the highest character. I believe him to be true to his word and to always have the best of intentions.

I do understand that Tony recently experienced a business failure that had a major impact on his life. I also understand that during the course of that failure he may not have properly executed some of his responsibilities. I believe that to be a result of events and circumstances beyond his control and ability, and definitely not a reflection of his intentions or his character. I continue to hold him in the highest regard.

Respectfully yours,

Robert A. Stromberg

To: Michael Premisler

Donna Hansen &
Kenneth Bjelke
19304 Wind Dancer St.
Lutz, Florida 33558

November 20, 2007

To Whom It May Concern:

On behalf of my husband Ken, and I, we are pleased to write a character reference for Anthony Valenti.

We met Tony Valenti in 1991 when we lived on Long Island. Even now that we live in Florida, our families have remained close friends.  Tony is a loyal and consistent friend.  He always calls to see how we are doing and we get together several times a year.

Tony ensures that our aging parents, all of whom still live on Long Island, are in good health and are receiving the care and attention they deserve. It is a relief for us to know that Tony and his wife, Ann, are there. They are always willing to help us out - no matter the time of day or night.

Tony is a very loyal son to both his parents and his in-laws. When his in-laws were getting up in years, without hesitation, Tony opened his home to them. His father-in-law has since past on, but his mother-in-law still lives with them.

Ann and Tony are wonderful parents. We watched them raise their beautiful daughter, Alexandra, who is now a  college-graduate.  Her happiness, well-being, and civic mindedness is a credit to her parents. We do not have children, but Tony and Ann generously allowed us to participate in their daughter's upbringing.  It was a joyful day for us when Tony invited us to attend their daughter's college graduation.

We consider our lives fuller, and ourselves blessed, because of our friendship with Tony Valenti and his family!

Sincerely,

Donna Hansen
CPA, Managing Director, PricewaterhouseCoopers
Certified Lay Speaker, United Methodist Church

Kenneth Bjelke
Lead Software Engineer
ACI Worldwide

Page 1

November 26, 2007

To Whom It May Concern,

I am submitting this letter regarding my relationship with Anthony Valenti. I have known Anthony Valenti for approximately 32 years, or for the better part of my whole life. Tony not only became part of my family at that time, but over the years has become a friend and someone to depend and lean on at all times.

I can say that growing up, I could not have asked for a better role model. Tony was always there for me. From helping me purchase my first car at the age of 17, to helping me get through the darkest days of my life when both my parents passed away within 6 weeks of each other in July, 2000.

I totally respect and trust my cousin, my friend, Anthony Valenti, as both my parents did. My husband Raymond and my daughter Jeana feel the same way. We are all honored to have him as a part of our lives.

Sincerely,

Rosalie Ragucci
16 Silo Lane
Levittown, NY  11756

**Exhibit E**

**Ann Marie Valenti**

**1529 Stevens Avenue**

**Merrick, NY 11566**

November 15, 2007

To Whom It May Concern:

The purpose of this letter is to make clear the type of person my husband, Anthony Valenti, truly is. My husband and I have been married 29 years - I consider our marriage to be strong, one built on trust. Throughout our 29 years, we have supported each other in every sense.

Needless to say, our marriage has encountered a great deal of stress over the last six years, however, we remain together. I truly believe that most marriages would not have survived the challenges we have experienced since 2001.

Both of us were raised by families of modest means. My father, a construction worker, worked outdoors exposed to the elements, but never complained. He did what was necessary to support his family. Tony's father worked as a tailor - same reason - to support his family and live the American dream. Our mothers were traditional housewives with occasional jobs to help supplement the family income. What did we learn from this? Nothing is handed to you on a silver platter. Tony and I have worked hard for every possession we own.

Tony graduated from the School of Visual Arts before we met. He was working at Jack Ward Color as a paste-up artist - I was working as a legal secretary in a mid-sized corporate New York law firm. We married in 1978; lived in a modest three-room apartment. In 1981, we purchased the house that we had lived in since 1978. In 1987, we moved to Merrick. From 1985 - 1991, I was a stay-at-home mom. I returned to work in 1991 in order to save money for our retirement and more importantly, our daughter Alex's college tuition.

We do not live our lives waiting for handouts - we do not feel a "sense of entitlement". If we decided to buy a new car, we worked as a team, budgeted properly and purchased that car. For this reason, it is very unsettling for us to have Tony accused of embezzlement.

Tony and I are honest, ambitious, loyal and trustworthy employees. He had earned the respect and trust of his former employers at Jack Ward Color. For these reasons, the President of Jack Ward Color, Karl Wessel, offered Tony an opportunity to become a partner . It is for those same reasons that I am currently the Director of Secretarial and Word Processing Services at Sidley Austin LLP, a major global law firm. I did this without a college degree - my dedication, hard work, ambition had earned the respect of all lawyers I worked with. I continue to approach my job in the same fashion.

We have raised our daughter, Alexandra, to understand the value of hard work. She has proven this many times over. She was a straight "A" student throughout grade school, middle school and high school. She ranked eighth in her high school graduating class. She has recently graduated from The George Washington University with Bachelor of Arts degrees in Political Science and Physics. She was awarded an academic scholarship by the University. In her junior year at the University, Alex won first place in an essay contest from the Independent Women's Forum - she was awarded a $5,000 check by Mrs. Lynne Cheney at the residence of the Vice President. In that same year, she won another contest by the National Italian American Foundation and was awarded an all-expense paid trip to Italy with a group of 40 students from across the U.S.

Alex is currently employed by U.S. Congressman, Peter King. She was offered this full-time position after working as an intern in the fall semester of her senior year. Like her parents, Alex does not miss a day of work unless she is truly ill - she works long hours and is a very dedicated employee to the Congressman.

The last six years have taken a toll on us physically and emotionally. Tony has been diagnosed with coronary artery disease and was treated by a therapist for a breakdown. I had to undergo talk therapy due to the stress post 9-11 and the financial strain caused by the dissolution of Jack Ward Color.

In order to keep the Company solvent, Tony had borrowed money from our parents. We basically depleted all of our savings. Since the dissolution of Jack Ward Color, Tony (and I) has tried to settle as much debt as financially possible. We settled the debt with the Small Business Administration through a mortgage on our home. At the time we satisfied this debt, Tony and I were about one year away from paying off the mortgage on our home. We now have a $285,000 mortgage on our home. In order to settle $32,000 debt with the New York State Department of Taxation, I withdrew $50,000 from my 401K plan.

In sum, Tony is not guilty of stealing - he is guilty of trusting the wrong individuals to close Jack Ward Color and for this reason, my husband continues to pay for the dreadful advice of Louis Perrotta, Jack Ward's financial officer and accountant.

Respectfully submitted,

Ann Marie Valenti

**Exhibit F**

# Personal Financial Statement of:

Anthony Valenti

as of:
11/19/2007

| Assets | Amount in Dollars | |
|---|---|---|
| Cash - checking accounts | $ | - |
| Cash - savings accounts | | - |
| Certificates of deposit | | - |
| Securities - stocks / bonds / mutual funds | | - |
| Notes & contracts receivable | | - |
| Life insurance (cash surrender value) | | - |
| Personal property (autos, jewelry, etc.) | 9,000 | 1999 BMW |
| Retirement Funds | 2,800 | |
| Real estate (market value) | 267,000 | 1/2 of 1529 Stevens Ave |
| Other assets | | - |
| Other assets | | - |
| **Total Assets** | **$    278,800** | |

| Liabilities | Amount in Dollars | |
|---|---|---|
| Current Debt (Credit cards, Accounts) | $    5,700 | WAMU VISA |
| Notes payable | - | |
| Taxes payable | 200,000 | Payroll Taxes (Jack Ward Color Service) |
| Real estate mortgages (describe) | 278,000 | |
| Other liabilities | | |
| Other liabilities | | |
| **Total Liabilities** | **$    483,700** | |

| **Net Worth** | **$    (204,900)** |
|---|---|

Signature: _Anthony Valenti_       Date: _11·23·2007_